ESTATE OF EDNA V. T. PETERS, DECEASED, T. GRAHAM PETERS, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4203-64.    Filed June 22, 1966.

*G. Kibby Munson*, for the petitioner.
*Eugene I. Meyers*, for the respondent.

Respondent determined a deficiency in the Federal estate tax of petitioner in the amount of $17,798.69. The sole issue for our decision is the extent to which a certain piece of improved realty, which was jointly owned by the decedent and her son as of the date of her death, is includable in her gross estate.

### FINDINGS OF FACT

All of the facts have been stipulated, and the stipulation of facts, together with the exhibit attached thereto, is incorporated herein and made a part of our findings by reference.

Edna V. T. Peters (hereinafter sometimes referred to as decedent) died testate on February 1, 1960. Decedent was a resident of Bethesda, Montgomery County, Md.

Decedent's heirs were her son, T. Graham Peters, two grandsons, David S. Peters and Robert G. Peters, a granddaughter, Katherine J. Peters, and a cousin, Louella Peters. On April 19, 1960, the Orphans' Court for Montgomery County, Md., granted letters testamentary to the executor herein, T. Graham Peters.

An estate tax return, Form 706, was filed on August 1, 1961, for the estate with the district director of internal revenue at Baltimore, Md. The valuation of the decedent's property for estate tax purposes was made as of the date of death.

One of the adjustments in the statutory notice of deficiency, whereby the taxable estate of the decedent was increased by the value of realty known as 4717 S. Chelsea Lane, Bethesda, Md., is conceded by respondent. It is agreed by the parties that no part of this realty is includable in decedent's estate for Federal estate tax purposes.

The adjustment in the statutory notice which is in controversy involves the property known as 1236 Mt. Olivet Road, NE., Washington, D.C., in which the decedent admittedly had an interest at the date of her death. That property at the date of death was included on decedent's estate tax return as an asset of her estate at a value of $47,500 for decedent's interest therein. The respondent has determined that the value of decedent's interest in this property should have been listed on the estate tax return at a higher value, namely $95,000 (i.e., the entire value of the property).

On Schedule E of the estate tax return, the following appears with respect to the property in question:

| Description | Value at date of death |
|---|---|
| Improved Real Estate | |
| 1236 Mt. Olivet Road, NE. | |
| 141/55 Washington, D.C. | |
| One-half appraised value | $47,500. |

(Acquired by decedent by devise in 1942 (Estate Tax paid; Estate of Orville S. Peters) and deeded by decedent to self and son jointly in February, 1948 (U.S. Gift tax paid, April 11, 1951)

The "appraised value" mentioned refers to a 1952 appraisal of the property which determined values for the land and improvements thereon.

The fair market value of the property (i.e, land and the improvements thereon) known as 1236 Mt. Olivet Road, NE., Washington, D.C., on February 1, 1960, was $95,000.

The land which is part of the property at 1236 Mt. Olivet Road was acquired by Orville S. Peters, deceased husband of decedent and father of T. Graham Peters, by purchase in 1937. In that year, 1937, Orville Peters had a building constructed on this land at a cost of

$26,589.64. The entire consideration paid for the land and improvements thereon prior to 1942 was furnished by Orville Peters, and no part thereof was contributed by the decedent or by T. Graham Peters.

Orville Peters died on August 23, 1942, and title to the Mt. Olivet Road property passed to Edna V. T. Peters under the terms of the will of her husband. The realty and improvements were valued at $33,653.76 in the estate tax return of Orville Peters, said valuation being as of August 23, 1942, the date of death of Orville Peters. This valuation properly reflected the fair market value of the property at the date of death of Orville Peters.

During the year 1946, a garage was constructed on the Mt. Olivet Road premises at a cost to Edna V. T. Peters of $1,650.

On or about February 18, 1948, Edna V. T. Peters created a joint tenancy in the Mt. Olivet Road property between herself and T. Graham Peters. The creation of the joint tenancy was a gift from Edna V. T. Peters to T. Graham Peters, and a U.S. gift tax return was filed by Edna V. T. Peters for the calendar year 1948 on which she reported this gift. The following statement appears on the gift tax return:

In February 1948 when I was the sole owner of parcel 141/55 improved by premises 1236 Mt. Olivet Road, N.E., I caused the title to be conveyed to myself and my son, Thos. G. Peters, as joint tenants. The total cost of the improvements then on the property was:

Manufacturing Building Built 1937_____ $26,589.00
Garage Built 1946_____ 1,650.00

Messrs. Beasley & Beasley, Inc., 711 14th St. NW., have appraised the property as of 1948 at the total sum of $66,033.00. At the date of the conveyance there was a debt against the property of $1,481.38 leaving a net value of $64,551.62 and a value for the gift of $32,275.81.

The fair market value of the entire Mt. Olivet property (land and improvements) at the date of the gift (i.e., creation of the joint tenancy) to T. Graham Peters was $66,033. The net value of the property for gift tax purposes was $64,551.62. The gift tax return was filed delinquent in June 1952, and a gift tax of $14.64 was paid.

On February 24, 1948, the sum of $24,000 was borrowed by Edna V. T. and T. Graham Peters from the Perpetual Building Association, Washington, D.C. Of the total sum so borrowed, $1,481.85 [1] was used to pay off the existing indebtedness on the property, and the additional sum of $22,375 was used to construct an addition to the building which was located on the Mt. Olivet premises. The $24,000 loan was secured by a first deed of trust on the Mt. Olivet property.

In February 1948, at the time of the creation of the joint tenancy in

[1] Although this figure was stipulated, it differs from the amount stipulated to be set out in the statement appearing on the gift tax return, $1,481.38. Nothing in the record explains this discrepancy.

the Mt. Olivet property, the $66,033 fair market value of such property was comprised of the following:

| | |
|---|---|
| Land value | $27, 614 |
| Building, replacement less depreciation | 36, 739 |
| Garage | 1, 680 |
| Total | 66, 033 |

In late 1948, immediately after the addition to the property costing $22,375 was constructed, the Mt. Olivet property, as improved, had a fair market value of $88,408, which sum was comprised of the following:

| | |
|---|---|
| Land value | $27, 614 |
| Building (original) less depreciation | 36, 739 |
| New addition | 22, 375 |
| Garage | 1, 680 |
| Total | 88, 408 |

In 1952, the fair market value of the Mt. Olivet property, as improved, was $95,588.50, which sum was comprised of the following, as determined by an appraisal of the property:

| | |
|---|---|
| Land value | $34, 517. 50 |
| Building (original) less depreciation | 39, 116. 00 |
| Building (addition) less depreciation | 20, 955. 00 |
| Garage | 1, 000. 00 |
| Total | 95, 588. 50 |

In February 1953, certain air-conditioning equipment was installed in the premises at 1236 Mt. Olivet Road, NE., at a cost of $1,914, one-half of which was paid by Edna V. T. Peters and the other half, in the amount of $957, was paid by T. Graham Peters.

In August 1953, a water tower was constructed on the Mt. Olivet premises at a total cost of $739.50. This improvement to the property was paid for by Edna V. T. and T. Graham Peters. Thus, one-half of such amount, or $369.75, was paid by Edna V. T. Peters and one-half of the amount, or $369.75, was paid by T. Graham Peters.

T. Graham Peters paid $15,158.44 out of his funds and Edna V. T. Peters paid $8,841.56 out of her funds in repayment of the $24,000 loan obtained from the Perpetual Building Association, this loan having been paid off in full prior to the date of decedent's death.

It is agreed between the parties that the $507.50, representing real property taxes imposed by the District of Columbia which had accrued on the property herein at issue as of the date of decedent's death, shall be apportioned between the value of such property which is includable in decedent's estate and the property value which we may find to be properly excludable therefrom.

OPINION

KERN, *Judge:* The question presented for our decision is the extent to which the fair market value of jointly owned improved realty is includable in the gross estate of one of the joint tenants. The relevant statute is section 2040 of the 1954 Code [2] and the regulation thereunder which is pertinent to our inquiry is section 20.2040–1, Estate Tax Regs.,[3] both of which we have set out in the margin. We are aware

---

[2] SEC. 2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth : *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person : *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

[3] Sec. 20.2040–1. Joint interests.

(a) *In general.* A decedent's gross estate includes under section 2040 the value of property held jointly at the time of the decedent's death by the decedent and another person or persons with right of survivorship, as follows :

(1) To the extent that the property was acquired by the decedent and the other joint owner or owners by gift, devise, bequest, or inheritance, the decedent's fractional share of the property is included.

(2) In all other cases, the entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners. See § 20.2043–1 with respect to adequacy of consideration. Such part of the entire value is that portion of the entire value of the property at the decedent's death (or at the alternate valuation date described in section 2032[)] which the consideration in money or money's worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions. In determining the consideration furnished by the other joint owner or owners, there is taken into account only that portion of such consideration which is shown not to be attributable to money or other property acquired by the other joint owner or owners from the decedent for less than a full and adequate consideration in money or money's worth.

The entire value of jointly held property is included in a decedent's gross estate unless the executor submits facts sufficient to show that property was not acquired entirely with consideration furnished by the decedent, or was acquired by the decedent and the other joint owner or owners by gift, bequest, devise, or inheritance.

(b) *Meaning of "property held jointly".* Section 2040 specifically covers property held jointly by the decedent and any other person (or persons), property held by the decedent and spouse as tenants by the entirety, and a deposit of money, or a bond or other instrument, in the name of the decedent and any other person and payable to either or the survivor. The section applies to all classes of property, whether real or personal, and regardless of when the joint interests were created. Furthermore, it makes no difference that the survivor takes the entire interest in the property by right of survivorship and that no interest therein forms a part of the decedent's estate for purposes of administration. The section has no application to property held by the decedent and any other person (or persons) as tenants in common.

(c) *Examples.* The application of this section may be explained in the following

of no decided cases which have considered the precise problem presented by the facts in the instant proceeding.

Briefly stated, those facts are as follows: The decedent inherited improved realty from her husband upon his death. As of the date of his death, August 23, 1942, an appraisal of this property fixed its fair market value at $33,653.76. In 1946, the decedent spent $1,650 to construct a garage on the property. This expenditure represented her initial individual capital outlay with respect to the property. During the entire period August 23, 1942, through February 17, 1948, the decedent was the sole owner of the property in question. On February 18, 1948, the decedent by gift created a joint tenancy of the property between herself and her son, T. Graham Peters. At the time of the establishment of the joint tenancy, the property had a fair market value of $66,033. Subsequent to the creation of the joint tenancy, the decedent and her son provided the sums of $10,168.31 and $16,485.19, respectively, for improvements to the property and for the payment of approximately a $1,481 mortgage thereon. As of the time of the decedent's death on February 1, 1960, the property in question had a fair market value of $95,000.

Petitioner's argument is based on one sentence in subparagraph (2) of section 20.2040-1(a), Estate Tax Regs., dealing with the question of what portion of the fair market value of a joint tenancy is to be excluded from the estate of one of the joint tenants. The pertinent part of this sentence is:

Such part of the entire value is that portion of the entire value of the property at the decedent's death * * * which the consideration in money or money's

examples in each of which it is assumed that the other joint owner or owners survived the decedent:

(1) If the decedent furnished the entire purchase price of the jointly held property, the value of the entire property is included in his gross estate;

(2) If the decedent furnished a part only of the purchase price, only a corresponding portion of the value of the property is so included;

(3) If the decedent furnished no part of the purchase price, no part of the value of the property is so included;

(4) If the decedent, before the acquisition of the property by himself and the other joint owner, gave the latter a sum of money or other property which thereafter became the other joint owner's entire contribution to the purchase price, then the value of the entire property is so included, notwithstanding the fact that the other property may have appreciated in value due to market conditions between the time of the gift and the time of the acquisition of the jointly held property;

(5) If the decedent, before the acquisition of the property by himself and the other joint owner, transferred to the latter for less than an adequate and full consideration in money or money's worth other income-producing property, the income from which belonged to and became the other joint owner's entire contribution to the purchase price, then the value of the jointly held property less that portion attributable to the income which the other joint owner did furnish is included in the decedent's gross estate;

(6) If the property originally belonged to the other joint owner and the decedent purchased his interest from the other joint owner, only that portion of the value of the property attributable to the consideration paid by the decedent is included;

(7) If the decedent and his spouse acquired the property by will or gift as tenants by the entirety, one-half of the value of the property is included in the decedent's gross estate; and

(8) If the decedent and his two brothers acquired the property by will or gift as joint tenants, one-third of the value of the property is so included.

worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions. * * *

Petitioner first contends that since the property was originally acquired by the decedent under the will of the husband "without actual cost to her," only the ratio of the cash expended by the decedent and by the other joint tenant is to be considered in the above-quoted formula. Consequently, petitioner makes the first alternative argument to the effect that since the total cash expenditures by the two joint tenants was $28,303.50, $11,818.31 of which was expended by the decedent, $\frac{11,818.31}{28,303.50}$ or 41.756 percent of the property's $95,000 fair market value should be included in decedent's gross estate.

Petitioner makes the second alternative argument that the term "cost of acquisition" in the regulation should be considered to be her basis in the property (which would be the fair market value as of decedent's husband's death pursuant to section 1014), and accordingly the prescribed ratio would be:

$$\frac{\$33,653.76 + \$11,818.31}{\$45,472.07 + \$16,485.19} = \frac{\text{Decedent's "cost"} + \text{her cost of improvements}}{\text{Total of numerator} + \text{surviving joint tenant's cost of improvements}}$$

or 73.393 percent of the fair market value of the property as of the time of decedent's death. This argument would result in the inclusion in decedent's gross estate of 73.393 percent of the fair market value of the property as of the date of her death.

Respondent argues that both of the alternative positions taken by the petitioner are completely unwarranted not only by section 2040 of the Internal Revenue Code of 1954, but also by the terms of the regulations taken in their entirety. Respondent points out that if petitioner were correct in the argument that the decedent had a zero "cost of acquisition," then any donee or legatee could avoid the Federal estate tax upon property inherited or acquired as a gift by contributing such property to a joint tenancy and having the coowner make minimal capital improvements.

Respondent further contends that petitioner's alternative argument which would recognize the decedent's "cost of acquisition" to be the $33,653.76 value as of her husband's death is incorrect because of its failure to recognize the appreciation from that figure to $66,033, which was the fair market value of the property at the time of the creation of the joint tenancy.

Respondent's solution of the problem is to include in the decedent's gross estate the total fair market value of the property as of the time of her death ($95,000) minus the sum of $14,196.43. He arrives at this latter sum by the application of a formula or ratio of his own. Although T. Graham Peters, the surviving joint tenant, has expended

the sum of $16,485.19 from his own funds, respondent relies on an appraisal of the property made in 1952, 8 years prior to decedent's death, in an amount approximately equal to $95,000 as establishing the fact that the subsequent additions of the air-conditioning equipment and water tower had no value; and that because T. Graham Peters' sole expenditure which affects the 1952 valuation was in the amount of $15,158.44 for an addition to a building, the total cost of which was $22,375, and because this addition was valued at $20,955 in the 1952 appraisal, the only amount to be excluded from the $95,000 total value should be computed as follows:

$$\frac{X}{\$15,158.44} = \frac{\$20,955}{\$22,375} \qquad X = \$14,196.43$$

The arguments of both parties are largely directed to a proper construction of the third sentence in section 20.2040–1(a)(2), Estate Tax Regs., as applied to the situation presented by the instant case. However, it is our opinion that, as suggested on brief by respondent, the regulation in question was not written by respondent with this situation in mind and was not intended to and does not apply to the problem before us. It is obvious to us that in this case there was no "total cost of acquisition." The decedent acquired her interest in the property by inheritance and the surviving joint tenant acquired his interest by gift from the decedent. None of the examples given in the regulation is pertinent to this situation. To apply this sentence of the regulation on the assumption that the decedent's cost was zero or that her "cost of acquisition" was her basis (i.e., the fair market value of the property at the time of her husband's death) would require us to make a forced and unnatural construction of the sentence which would result in the circumvention of the obvious intendment of the statute and a contravention of the broad purposes stated in the first and fourth sentences of section 20.2040–1(a) of the regulations.

The purpose of the statute, as plainly stated therein, is to include in a decedent's gross estate "the value of all property * * * to the extent of the interest therein held as joint tenants by the decedent and any other person * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." Our problem in the instant case is to determine what part of the interest in the property held as joint tenants at the time of decedent's death has been "shown to have originally belonged to" the surviving joint tenant. In our opinion that part of the additions and improvements on the property (including the payment of a small mortgage) which were paid for by the surviving partner out of his own funds is to be considered as having "originally belonged to" the surviving joint

tenant and "never to have been received or acquired by [him] from the decedent for less than an adequate and full consideration in money or money's worth."

The problem then arises of determining the amount of money representing such property or interest which "originally belonged to" the surviving joint tenant which should be deducted from the stipulated value of the property of the joint tenancy at the time of decedent's death. Limiting ourselves strictly to the facts of the instant case, it is our opinion that the record before us warrants a conclusion that the sum of money which fairly represents the property or interest originally belonging to the surviving joint tenant is the amount of money actually expended by him therefor or $16,485.19. There has been no showing by the petitioner that such property or interest has appreciated in value over its cost [4] and no testimony adduced by respondent to weaken the evidence of cost as representing value.[5] It follows that the amount to be included in decedent's gross estate on account of the value of the property "held as joint tenants by the decedent" and the surviving joint tenant is $78,514.81 ($95,000 minus $16,485.19).

*Decision will be entered under Rule 50.*

---

[4] If such a showing had been made, it might have been necessary for us to devise a formula or ratio of our own.

[5] It is stipulated that the fair market value of the entire property when decedent died in 1960 was $95,000. An appraisal of the property in 1952 placed a valuation on four components of the property (the land value, the value of the original building, the value of the additional building and the value of the garage) in the total amount of $95,588.50, which included the value of $20,955 placed on the additional building. Respondent's contention that this valuation should be taken as establishing the value of the additional building and the complete lack of value of the air-conditioning equipment and water tower in 1960 is without merit.