ESTATE OF AUSTIN R. SILVESTER, Deceased, ANN B. SILVESTER, Co-Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Silvester v. Commissioner
Docket No. 3314-75.
United States Tax Court
T.C. Memo 1977-439; 1977 Tax Ct. Memo LEXIS 2; 36 T.C.M. (CCH) 1815; T.C.M. (RIA) 770439; December 29, 1977, Filed *2 (1) At the time of his death, the decedent and his surviving spouse held certain real and personal property as joint tenants with rights of survivorship. No evidence was adduced to show that any portion of the value of such property was attributable to consideration furnished by the surviving spouse. Held, the entire date-of-death value of such property is includable in the gross estate. Sec. 2040, I.R.C. 1954. (2) Held, the gross estate includes one-half of the rent receivable with respect to real property held by the decedent and his surviving spouse as joint tenants with rights of survivorship and one-half of a joint bank account balance consisting of rentals from such property. Sec. 20.2033-1(b), Estate Tax Regs. (3) Held, the Commissioner's determination of the date-of-death fair market value of certain real property is sustained. (4) Held, insurance proceeds paid with respect to a life insurance policy on the life of the decedent are includable in the gross estate. Sec. 2042, I.R.C. 1954. (5) On the original estate tax return, the estate elected to value the gross estate as of the date of death. In an *3 amended return filed almost 4 years after the decedent's death, the estate attempted to elect the alternate valuation date authorized by sec. 2032, I.R.C. 1954. Held, the election of the alternate valuation date was not valid, because it was not made within the time prescribed by sec. 2032(c), I.R.C. 1954; the Commissioner's determination of the date-of-death values of certain shares of stock is sustained. (6) Held, no deduction is allowable for an alleged claim against the estate. *4 Sec. 2053(a), I.R.C. 1954. (7) Held, the petitioner has failed to prove that it is entitled to a deduction for attorney's fees and expenses of the executrix in excess of amounts claimed on the original estate tax return and previously allowed by the Commissioner. *5 Sec. 2053(a), I.R.C. 1954. Ann B. Silvester (executrix), for the petitioner. Richard A. Jones, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $18,493.00 in the estate tax of the Estate of Austin R. Silvester, and the estate has claimed an overpayment of tax. The issues remaining for decision are: (1) Whether any portion of the date-of-death values of certain real and personal property held by the decedent and his surviving spouse as joint tenants with rights of survivorship was attributable to consideration furnished by the surviving spouse *6 and therefore excludable from the gross estate; (2) whether the gross estate includes any portion of the rent receivable with respect to certain jointly owned real property and any portion of a joint bank account balance consisting of rents from such property; (3) whether the Commissioner erred in determining the date-of-death fair market value of such real property; (4) whether certain insurance proceeds paid with respect to a life insurance policy on the life of the decedent are includable in the gross estate; (5) whether the date-of-death values of certain shares of stock as reported on the original estate tax return and accepted by the Commissioner should be reduced; (6) whether the estate is entitled to a deduction for an alleged claim against it in the amount of $2,500.00; and (7) whether the petitioner has proved that any amount in excess of $9,395.00 is allowable as a deduction from the gross estate for attorney's fees and expenses incurred by the executrix. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petition in this case was filed on behalf of the Estate of Austin R. Silvester by Ann B. Silvester, co-executrix, who resided *7 in Tucson, Ariz., at the time the petition was filed. The original estate tax return for the Estate of Austin R. Silvester was filed with the Internal Revenue Service Center, Ogden, Utah, on April 18, 1972, by Ann B. Silvester and John P. Silvester, co-executrix and co-executor. Austin R. Silvester (the decedent) was born on August 29, 1889. He and R. Marion Silvester were married on April 6, 1917, and lived together as husband and wife until his death on July 18, 1971. At the time of his death, the decedent resided in Boulder City, Nev.
The decedent and his wife had five children: Child
Date of Birth
Austin G. Silvester
May 1918
John P. Silvester
July 1919
Marion S. (Silvester) Smith
March 1924
Ann B. Silvester
July 1927
June D. (Silvester) Wiley
June 1934 During the period of Ann B. Silvester's childhood, her mother had no housekeeper to assist her with housework or child care. The record contains scant information as to the financial resources which the decedent and his wife brought to their marriage. During the 1915-1916 academic year, R. Marion Silvester was employed as a teacher in Rutland Jefferson County, N. Y., and earned a *8 salary of $525. During the 1916-1917 academic year, she taught in Wellsville, N. Y., and earned $600. On November 25, 1922, Ella Reed Entwistle, the mother of R. Marion Silvester, died intestate leaving an estate, estimated at $12,000, to be distributed among four children. For some years, R. Marion Silvester served as the unpaid book-keeper for one of her husband's businesses. Additionally, she performed certain other services in connection with the decedent's business, but apparently received no remuneration for her services. At the time of his death, the decedent and his wife owned, as joint tenants with right of survivorship under New Jersey law, a note and mortgage with respect to certain real property (lots 9 and 17) located in Princeton, N.J. At the time of the decedent's death, 302 monthly payments of $933.72 remained to be paid with respect to such note and mortgage. The date-of-death value of the note and mortgage was $115,940.00. On or about April 8, 1938, lots 9 and 17 were conveyed by the Silvester Motor Co., a New Jersey corporation, acting through its president Austin R. Silvester, to Austin R. Silvester and R. Marion Silvester. Such conveyance was in consideration *9 of cancellation of a debt owed by the corporation to Austin R. Silvester for unpaid salaries. Lots 9 and 17 later were sold; part of the consideration received from the sale was the note and mortgage at issue. Austin R. Silvester paid all of the expenses with respect to the sale. At the time of his death, the decedent and his surviving spouse also held as joint tenants with right of survivorship certain real property located in the Township of Princeton, N.J. (lots 3 and 4). Lots 3 and 4 were acquired in 1937 or 1938 by Austin R. Silvester or Austin R. Silvester and R. Marion Silvester as joint tenants with right of survivorship. At the time of their acquisition, lots 3 and 4 were improved with two old buildings containing apartments which were rented to tenants from 1937 or 1938 until June 15, 1956. During such period, R. Marion Silvester performed many of the functions of an apartment manager; she collected the rents, handled tenants' requests and complaints, and cleaned the apartments after they were vacated. From June 15, 1956, until the property was sold in 1976, R. Marion Silvester performed no services with respect to lots 3 and 4. At the time of the decedent's death, *10 lots 3 and 4 were subject to a lease executed on June 15, 1956. The rights of the tenant under such lease were held by the trustees of Princeton University (Princeton). The lease provided for monthly rental payments of $600, payable on the 15th day of each month, and payment by the tenant of all taxes levied or assessed against the property within 30 days after such taxes became due and payable. Rental payments with respect to the lease of lots 3 and 4 generally were deposited into bank account No. XXX-X079-4 at Union Trust Company, Ellsworth, Maine, in the name of Austin R. Silvester or R. Marion Silvester (the bank account). The date-of-death balance in such account was $1,211.66, all of which was attributable to the deposit of rental income from lots 3 and 4. [1]
On July 12, 1971, Princeton drew a check on its bank account in the amount of $1,260.48. Such check was in payment of rent due on or before July 15, 1971, and was *11 deposited into the bank account on July 20, 1971. [2]
The lease with respect to lots 3 and 4 also contained an option to purchase, giving the tenant the right to purchase the property "for a sum not less than Ninety Thousand Dollars ($90,000.00) and not exceeding One Hundred Twenty Thousand Dollars ($120,000.00) * * *." With respect to such option to purchase, the lease further stated: It is understood that any sum to be paid in excess of the minimum hereinabove provided shall be based on any reduction in the value of the dollar based on its purchasing power as of the date hereof, rather than on any increase in the value of the lease premises. * * *
The expiration date of the option to purchase was June 15, 1976. On or about May 21, 1976, Princeton exercised the option, paying a total consideration of $120,000. By 1971, the 1956 purchasing power of $90,000 had decreased by 20.40 percent based upon the Wholesale Price Index, and by 32.95 percent based upon *12 the Consumer Price Index. Accordingly, the date-of-death option purchase price with respect to lots 3 and 4 was $113,065, based on the Wholesale Price Index, or $134,228, based on the Consumer Price Index. However, the option price was limited by the terms of the lease to $120,000. In his notice of deficiency, the Commissioner determined that the date-of-death fair market value of lots 3 and 4 was $109,770; such amount was identical to the value shown in the 1971 records of the Princeton Township Tax Assessor, County of Mercer, State of New Jersey. At the time of his death, the decedent's life was insured by the Mutual Life Insurance Co. of New York (MONY) under insurance policy No. 269-30-76 in the face amount of $2,000.00. Pursuant to such policy, MONY paid $2,055.78 to the designated beneficiary upon the death of the decedent. All rights in this policy were held by the decedent at the time of his death. At the time of his death, the decedent owned as his sole and separate property shares of stock in seven corporations. The date-of-death values of such stocks, as reported on the original estate tax return filed for the Estate of Austin R. Silvester and accepted by the *13 Commissioner, were as follows: Value at Date Stock
No. of Shares
of Death
Chase Manhattan Bankh237
$ 12,028
General Motors
954
74,650
Standard Oil of New
Jersey
181
14,164
Hercules Powder
300
14,288
Chesapeake and Ohio
Railroad
50
2,982
Kennecott Copper
150
4,744
U.S. Steel
50
1,544
Total
$124,400 On the original estate tax return, each of the stocks was listed with the notation "New York Stock Exchange * * * Entire value reported." The estate did not elect the alternate valuation date on the original estate tax return; it first notified the Commissioner of an intent to make such an election in the petition filed with this Court and in an amended return filed with the Ogden Service Center of the Internal Revenue Service. Both such documents were filed on or about April 15, 1975. On October 22, 1966, Ann B. Silvester wrote a check in the amount of $2,500 payable to her father, Austin R. Silvester. Miss Silvester did not file a claim with the Estate of Austin R. Silvester with respect to such check. OPINION Issue 1. Joint Tenancy Property
A decedent's gross estate includes the full date-of-death value *14 of jointly held property, except such part of the entire value as is shown to be attributable to consideration in money or money's worth furnished by the surviving joint owner. In determining the consideration furnished by the survivor, there is not taken into account any money or other property furnished by the decedent to the survivor for less than full and adequate consideration in money or money's worth. If part of the value of the property is shown to be attributable to consideration furnished by the survivor, the amount to be excluded from the gross estate is that portion of the entire date-of-death value of the property which the consideration furnished by the survivor bears to the total cost of acquisition and capital additions. Sec. 2040, Internal Revenue Code of 1954[3]; sec. 20.2040-1(a), Estate Tax Regs. The entire value of jointly held property is includable in the decedent's gross estate, unless the executor submits facts sufficient to show that some part of the consideration used to acquire such property was furnished by the survivor, or that it was acquired by *15 the decedent and the survivor by gift, bequest, devise, or inheritance. Sec. 20.2040-1(a)(2), Estate Tax Regs. Where the Commissioner determines that the entire value of jointly held property is includable in the gross estate, the taxpayer has the burden of proving such determination invalid. Estate of Peabody v. Commissioner,41 B.T.A. 1 (1940). a. Lots 3 and 4
Although the evidence is not clear, it appears that lots 3 and 4 were acquired in 1937 or 1938 in the name of Austin R. Silvester, or in the names of Austin R. Silvester and R. Marion Silvester as joint tenants with right of survivorship. There is no evidence whatsoever as to the purchase price, purchase terms, or source of funds used to acquire this property. Miss Silvester argues that the decedent and his surviving spouse had an oral agreement to engage in business together, and that each made equal contributions of time, talent, effort, and money to their various business ventures. Thus, Miss Silvester alleges, one-half of the value of lots 3 and 4 is attributable to consideration furnished by the surviving spouse. There are cases in which the courts have found that the surviving spouse *16 furnished part of the consideration to acquire the property at issue, where such consideration was derived from the joint efforts of the decedent and the surviving spouse. E.g., United States v. Neel,235 F. 2d 395 (10th Cir. 1956); Singer v. Shaughnessy,198 F. 2d 178 (2d Cir. 1952); see also Estate of Ensley v. Commissioner,T.C. Memo. 1977-402; Estate of Carpousis v. Commissioner,T.C. Memo. 1974-258; Estate of Otte v. Commissioner,T.C. Memo. 1972-76. However, in each of those cases, the surviving spouse testified with respect to her contributions in unequivocal terms, and there was a clear showing of mutual effort and a pooling of resources. Moreover, in each of those cases, the surviving spouse's activities were in excess of services normally performed by a wife under the marriage contract. Compare Estate of Loveland v. Commissioner,13 T.C. 5 (1949). In the case before us, the surviving spouse did not testify at the trial; there was a stipulation as to what her testimony would be, if she did testify. The stipulation was general and not clear as to the precise nature or *17 extent of her services. The only testimony in this regard was that of Miss Silvester, which was a combination of hearsay and remembrances of events which occurred before she was 10 years old. The evidence does not establish the monetary value of the services of the surviving spouse, nor does it establish profits from the businesses as the source of funds used to acquire lots 3 and 4. Moreover, there is no evidence that the surviving spouse had any other funds available in 1937 or 1938 with which to provide any contribution toward the acquisition of such property. Although she was included in a list of heirs filed at the time of her mother's death in 1922, there is no evidence as to what she inherited, if anything, or as to the disposition of any inherited property.Miss Silvester has failed to convince us that the surviving spouse furnished any part of the consideration in money or money's worth used to acquire the property at issue; accordingly, the Commissioner's determination is sustained. Estate of Peters v. Commissioner,386 F. 2d 404, 407 (4th Cir. 1967), affg. *18 46 T.C. 407 (1966); Foster v. Commissioner,90 F. 2d 486 (9th Cir. 1937), affg. a Memorandum Opinion of this Court, affd. per curiam 303 U.S. 618 (1938); Estate of Peabody v. Commissioner,supra.
b. Note and Mortgage
The note and mortgage were part of the consideration received from the sale of real property acquired by the decedent and his wife on or about April 8, 1938. Such property was transferred to the decedent and his wife by the Silvester Motor Co. in consideration for the cancellation of a debt owed by the company to the decedent. Since the decedent supplied all of the consideration for the acquisition of the real property, such property would have been fully includable in his gross estate if retained, and the effect of section 2040 is not avoided because such property later was converted into other jointly held property. Endicott Trust Co. v. United States,305 F. Supp. 943 (N.D. N.Y. 1969); sec. 20.2040-1(c)(4), Estate Tax Regs. Accordingly, the entire date-of-death value of the note and mortgage is included in the decedent's gross estate. Issue 2. Rent
a. Joint Bank Account
*19 The evidence establishes that the $1,211.66 date-of-death balance in the bank account was entirely attributable to the deposit of rental income from lots 3 and 4. For the period during which the rental income was deposited in the bank account, the lots were held in joint tenancy. The Commissioner's position is that under New Jersey law, when property held in joint tenancy with rights of survivorship is leased to a third party, the cotenants share equally in the rents from such property. Newman v. Chase,70 N.J. 254, 359 A. 2d 474, 480 (1976); Lohmann v. Lohmann,50 N.J. Super. 37, 141 A. 2d 84 (App. Div. 1958). Accordingly, the Commissioner maintains that one-half of the date-of-death balance in the bank account belonged to the decedent and is includable in his gross estate. Sec. 20.2040-1(c)(5), Estate Tax Regs. Miss Silvester's position is that the funds in the bank account belonged entirely to the surviving spouse. Miss Silvester alleges that through a private arrangement between the decedent and his surviving spouse, the surviving spouse had complete ownership and control of both the rental procee eds and the bank account at issue. However, *20 no evidence was presented to show the existence of such an arrangement. Moreover, although the surviving spouse did at one time serve as the manager of the rental property, such services ceased in 1956. Thus, no portion of the date-of-death balance in the bank account can be viewed as attributable to her services. Accordingly, the Commissioner's determination that one-half of the date-of-death balance of the bank account is includable in the gross estate is sustained.
b. Rent Receivable
Under section 2033, rents accrued at the date of the decedent's death are included in the gross estate. Sec. 20.2033-1(b), Estate Tax Regs. The rental payment in question was due on or before July 15, 1971.On July 12, 1971, the tenant issued a check in the amount of $1,260.48 in payment of such rent to the decedent and his surviving spouse. The Commissioner included half of such amount, or $630, in the gross estate. Miss Silvester again maintains that the entire rental payment was, by oral agreement, the sole property of the surviving spouse. We are not persuaded by such argument, and accordingly, we must sustain the Commissioner's determination. Issue 3. Fair Market Value - Lots *21 3 and 4
The value of property includable in a decedent's estate is the fair market value at the time of the decedent's death, unless the alternate valuation date is elected. Sec. 2031(a); sec. 20.2031-1(b), Estate Tax Regs.The fair market value for purposes of section 2031(a) is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. In his notice of deficiency, the Commissioner determined that the total fair market value of lots 3 and 4 was $109,770. The Commissioner's determination of fair market value was identical to the value at which the property was assessed for local tax purposes and was slightly less than the date-of-death option price. Miss Silvester has the burden of proving that such determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; Nicholson v. Commissioner,21 B.T.A. 795, 799 (1930); Sugerman v. Commissioner,20 B.T.A. 960, 965 (1930). Although Miss Silvester asserted that the date-of-death fair market value *22 of lots 3 and 4 was $77,500, no evidence was presented to support such assertion. Accordingly, the Commissioner's determination is sustained. Issue 4. Includability of Insurance Proceeds
Section 2042 provides for the inclusion in the gross estate of the amount receivable (other than by the executor) under life insurance policies on the life of the decedent with respect to which the decedent possessed any incidents of ownership. The amount to be included under section 2042 is the full amount receivable under the policy. Sec. 20.2042-1(a)(3), Estate Tax Regs. The evidence before us establishes that the life insurance policy at issue insured the life of the decedent, and that the decedent at the time of his death retained all incidents of ownership with respect to such policy. Accordingly, the proceeds of the policy are includable in the gross estate. Issue 5. Fair Market Value - Stock
If there is a market for stocks on a stock exchange, the fair market value per share of such stock generally is the mean between the highest and lowest quoted selling prices on the relevant valuation date. Sec. 20.2031-2(b)(1), Estate Tax Regs. On the original estate tax return, *23 each of the stocks at issue was listed with the notation "New York Stock Exchange * * * Entire value reported"; presumably, this meant that the values reported on the return were obtained by reference to stock exchange quotations. The Commissioner accepted the date-of-death valuation of $124,400 as shown on the return and accordingly made no adjustment in this respect in his notice of deficiency. On an amended return, filed on or about April 15, 1975, the estate elected to use the alternate valuation date authorized by section 2032 and valued the stock at $31,900. In her petition, Miss Silvester alleged that the "transfer value" of the stock was $31,900, and claimed an overpayment of tax. Under section 2031, the gross estate is valued as of the date of the decedent's death. However, section 2032 permits the use of the alternate valuation date, but only if an election of the alternate date is made on a return filed within the time prescribed by law, including any applicable extensions of time. In the case before us, the estate tax return was due to be filed within 9 months of the decedent's death (sec. 6075), but an election to use the alternat ve valuation date was not made *24 until the filing of the amended estate tax return, almost 4 years after the decedent's death. Clearly, such election was not timely made and was not valid; therefore, the estate is required to value the stock as of the date of the decedent's death. Sec. 2032; sec. 20.2032-1(b)(2), Estate Tax Regs.; Estate of Ryan v. Commissioner,62 T.C. 4, 10 (1974); Estate of Downe v. Commissioner,2 T.C. 967, 970-971 (1943); Estate of Flinchbaugh v. Commissioner,1 T.C. 653, 655 (1943); Rosenfield v. United States,156 F. Supp. 780, 783-784 (E.D. Pa. 1957), affd. per curiam 254 F. 2d 940 (3d Cir. 1958), cert. denied 358 U.S. 833 (1958). No evidence has been presented to show that the values reported on the original estate tax return were incorrect. Hence, Miss Silvester has failed to show that the estate is entitled to an overpayment of tax. Rule 142(a), Tax Court Rules of Practice and Procedure.
Issue 6. Claim Against the Estate
Section 2053(a)(3) provides for a deduction from the gross estate for claims against the estate. To be deductible, a claim must be allowable under the laws of the *25 State in which the estate is administered. Only such claims as are enforceable personal obligations of the decedent, existing at the time of his death, are deductible. Sec. 20.2053-4, Estate Tax Regs. The only evidence before us with respect to this issue is a copy of a check payable to the decedent drawn on an account in the name of Ann B. Silvester in October of 1966, plus her testimony to the effect that the decedent was to hold these funds and have them available to her upon her request.Miss Silvester did not file a claim with the estate of the decedent for the $2,500, nor was any deduction claimed for such amount on the original estate tax return. Miss Silvester first raised such claim in the amended estate tax return and in the petition filed with this Court, in which she claimed an overpayment of tax. On the basis of the evidence before us, we are not convinced that there was a valid personal obligation of the decedent, payable by his estate. Compare Glascockv. Commissioner,104 F. 2d 475 (4th Cir. 1939), affg. a Memorandum Opinion of this Court, with *26 Kerr v. United States,199 F. Supp. 447 (E.D. Va. 1961). In addition, there is a question as to whether Miss Silvester's failure to present any claim during probate caused it to be unenforceable. Estate of Hagmann v. Commissioner,60 T.C. 465 (1973), affd. per curiam 492 F. 2d 796 (5th Cir. 1974). Accordingly, no deduction for a claim against the estate is allowable. Issue 7. Administration Expenses
In computing the gross estate, a deduction is allowable for such expenses as are actually and necessarily incurred in the administration of the decedent's estate, that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. Sec. 2053(a)(2); sec. 20.2053-3(a), Estate Tax Regs.; Estate of Smith v. Commissioner,57 T.C. 650, 660-661 (1972), affd. 510 F. 2d 479 (2d Cir. 1975), cert. denied 423 U.S. 827 (1975). Administration expenses include executor's commissions, attorney's fees, and miscellaneous expenses. Sec. 20.2053-3(a), Estate Tax Regs. The administration expenses claimed on the original estate tax return were allowed in full *27 by the Commissioner. In the amended estate tax return and the petition, Miss Silvester asserted that an additional $4,578 was deductible for attorney's fees and expenses incurred by the executrix. However, Miss Silvester has not come forward with any evidence that expenses in excess of those claimed on the original estate tax return have been or will be incurred in the administration of the estate. Accordingly, based on this record, she has failed to demonstrate that the estate is entitled to a deduction in excess of that already allowed by the Commissioner, or that there is an overpayment of tax. But see Rule 156, Tax Court Rules of Practice and Procedure.
In conclusion, we recognize that the petitioner has lost most of the issues in this case because of its failure to carry its burden of proof. Miss Silvester was advised that she should secure the assistance of legal counsel; yet, she chose to go ahead on her own. On two occasions, the Court held pretrial conferences with Miss Silvester to assist her in the preparation of the case; in addition, this case was previously set down for trial and was continued twice, at Miss Silvester's request, in part due to her health and in *28 part to give her more time to prepare for trial. At the time of trial, it was obvious that she was not feeling well, but in view of the prior continuances, in part due to her health, there was no reason to believe that she would ever be better able to proceed. Moreover, it is not at all clear that the petitioner could have prevailed on any of these issues even if the case had been better prepared. To reflect concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. In his notice of deficiency, the Commissioner included the entire date-of-death balance in such account in the decedent's gross estate. However, on brief, he has conceded that only one-half of such balance is includable in the gross estate.↩
2. In his notice of deficiency, the Commissioner included the entire amount of rent receivable in the gross estate. On brief, he has conceded that only one-half of such amount should be included in the gross estate.↩
3. All statutory references are to the Internal Revenue Code of 1954.↩