[Civ. No. 14011.   First Dist., Div. Two.   Nov. 9, 1949.]

COLONEL E. TOMPKINS, Appellant, v. ERNEST L. BISHOP et al., Respondents.

John H. Leonard for Appellant.

Stanford G. Smith and Loyd R. Miller for Respondents.

GOODELL, J.—The appellant sued to quiet title to a piece of residential property on Gault Street in the city of Santa Cruz. The complaint alleged that it was the community property of appellant and Mary M. Tompkins at the time of her death and that appellant's claim thereto was based on his status as surviving spouse. Respondent Ernest L. Bishop was a son, and respondent Pearl Humphrey a daughter of Mrs. Tompkins by her former marriage. Respondents' answer denied the allegations of the complaint and alleged that on May 5, 1947, Mary M. Tompkins deeded an undivided one-half interest in the property to Ernest L. Bishop who (joined by his wife) on June 2, 1947, deeded the one-half interest to Ralph C. Humphrey and Pearl Humphrey his wife.

The court made findings in favor of defendants and decreed that an undivided half of the property was owned by respond-

ents Ralph C. and Pearl Humphrey and other half by appellant. From the decree this appeal was taken.

The appellant and Mary M. Tompkins (formerly Bishop) were married on August 30, 1927, at which time Mrs. Tompkins owned upwards of $20,000 . of income-producing property. On the day of their marriage the spouses entered into an agreement reading as follows: ''That in consideration of the consent of said party of the second part to become the wife of said party of the first part, and her agreement to faithfully observe and perform all the duties and obligations of a wife to said first party, said first party hereby agrees to and does forever renounce, remise, release and forever quit-claim all and singular his rights, claims and interest in and to all property and property rights of the said second party; that he disclaims and relinquishes all marital rights of or to property now belonging to her, or that she may hereafter acquire, of every kind and nature; that he releases and forever quit-claims all and every right of inheritance, or right of succession in law and in equity; and agrees to leave to her separate ownership and possession of all property she now has or may hereafter acquire, to go to her heirs at law or inheritance, exclusive of any rights he might otherwise have in case of her death: . . .''

The defense was founded on the agreement, a copy whereof is contained in the answer. Since no affidavit was filed under section 448, Code of Civil Procedure, its genuineness and due execution were deemed admitted.

In November, 1939, appellant and his wife contracted to buy the property for $1,500 on small monthly payments. All the payments were made by appellant from his earnings and old age security allowances according to his undisputed testimony. In 1946, title was conveyed to appellant and Mary M. Tompkins by a deed which described them as husband and wife.

Shortly before Mrs. Tompkins' death a part of the property was sold for $3,000, of which appellant received approximately $600, his wife a little under $600, and approximately $1,800 was put into improvements on the remaining part.

On May 5, 1947, which was 12 days before her death, Mrs. Tompkins conveyed the undivided one-half interest to her son without her husband's knowledge.

Appellant contends that as ''Section 172a of the Civil Code gives the husband 'the management and control of the community real property' '' (*Grolemund* v. *Cafferata,* 17 Cal.2d

679, 684 [111 P.2d 641]) the deed signed solely by his wife was ineffective to pass any title. He states "that the one ultimate fact to be established by appellant is that the real property to which Mrs. Tompkins executed a deed was community property and this fact is proven by the receipt in evidence of the deed to appellant and to Mrs. Tompkins as 'husband and wife.' " On that issue, however, the court found against him, and the only question presented for decision is whether such finding is supported by the evidence. There can be no doubt that the court based its finding on the agreement.

■ "A husband and wife may hold property as joint tenants, tenants in common, or as community property." (Civ. Code, § 161.) Since the spouses did not take title as joint tenants, they must have taken either as tenants in common or as community property.

■ In addition to the facts already recited as to the source of the payments, appellant relies on the provision of section 164, Civil Code, that when "property is acquired by husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the community property of said husband and wife." It may be conceded that the facts respecting the manner in which the property was paid for, taken in combination with the presumption of section 164, were sufficient—*other things being equal*—to have given the title a community property character. However, appellant was confronted with the following provision of the agreement: "and (he) agrees to leave to her separate ownership and possession all property she now has or may hereafter acquire." There is no limitation therein as to the mode or manner of acquisition.

Section 158, Civil Code, provides that "Either husband or wife may enter into any engagement or transaction with the other . . . respecting property, which either might if unmarried . . ." The agreement was made on the day when the parties were married, but *after* the ceremony, for it describes them as husband and wife and is signed and acknowledged in the wife's new name. It was not, as respondents repeatedly call it, an antenuptial agreement, but was squarely within the provisions of section 158.

Appellant testified that there was an understanding between himself and his wife that the Gault Street place would be community property, but the court apparently did not permit

such testimony to outweigh the provisions of the written contract.

It may be assumed that when the spouses made the contract in 1927 they knew nothing of the Gault Street property which they acquired 19 years later. Their contract, however, applied as well to property *thereafter acquired* as to property theretofore owned by Mrs. Tompkins.

It is settled law that "under the plenary authority to contract conferred by sections 158 and 159 of the Civil Code, the spouses may by contract made during the marriage change the character of property from community to separate estate of both or either spouse . . ." (3 Cal.Jur. 10-Yr.Supp. 638; *Siberell* v. *Siberell,* 214 Cal. 767, 770 [7 P.2d 1003].) In *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712, 719, 720 [103 P. 190], one of the leading cases, the court says: "Under our law there can be no doubt that a husband and wife may enter into a contract with respect to their property whereby one may release to the other all interest, both present *and in expectancy*" (citations; emphasis added). There the agreement between the husband and wife was that all community property on hand *or to be acquired by either* should be and become the sole and separate property of the wife.

It follows that when the property was conveyed to appellant and Mrs. Tompkins title vested in them as tenants in common and not as community property. The agreement which contemplated after-acquired property transmuted what might otherwise have been the wife's community interest into her separate property. In other words the presumption of section 164, which was but disputable (*Estate of Trelut,* 26 Cal. App.2d 717, 723, 724 [80 P.2d 147]) as between the spouses, was dispelled by the agreement, and the court's finding against the presumption is binding on appeal (*Estate of Trelut, supra;* *Estate of Ades,* 81 Cal.App.2d 334, 337 [184 P.2d 1]).

In addition to the provision in the agreement that after-acquired property should have a separate character, it must be borne in mind that therein appellant also disclaimed and relinquished to his wife "all marital rights of or to property now belonging to her, or that she may hereafter acquire . . ." also "all and every right of inheritance, or right in law and in equity."

Granting that improvements were added to the property by appellant or at his expense, the title thereto followed the title to the land (3 Cal.Jur. 10-Yr.Supp. 525; *Shaw* v. *Bernal,* 163 Cal. 262, 267 [124 P. 1012]; *Dunn* v. *Mullan,* 211

Cal. 583, 588, 589 [296 P. 604]; *Walsh* v. *Walsh,* 56 Cal. App.2d 801, 804 [133 P.2d 416]).

The fact that the agreement was not recorded in Santa Cruz County until a month after Mrs. Tompkins' death is of no legal consequence as between appellant and his wife or her grantees, no rights of creditors or other third persons being involved. (*Estate of Cutting,* 174 Cal. 104, 109 [161 P. 1137].)

The decree is affirmed.

Nourse, P. J., and Dooling, J., concurred.