110 T.C. No. 24


UNITED STATES TAX COURT


ESTATE OF WAYNE-CHI YOUNG, DECEASED,
TSAI-HSIU HSU YANG, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20139-94.                    Filed May 11, 1998.


        Decedent and his wife Yang owned real property in
California, a community property State.  Decedent's Federal
Estate Tax Return reported 50 percent of the date of death
value of the property as decedent's interest therein under
sec. 2033, I.R.C., and then claimed a 15-percent fractional
interest discount under <u>Propstra v. United States</u>, 680 F.2d
1248 (9th Cir. 1982).  After filing the estate tax return, P
obtained a State trial court decree which adjudicated
decedent's interest in certain property.  R was not a party
to the State court proceeding.  R determined that decedent
and Yang held the property as joint tenants with right of
survivorship, as stated in the deeds.  Therefore, R
determined that decedent's gross estate included half the
value of the property under sec. 2040, I.R.C., and
disallowed the 15-percent fractional interest discount.
        <u>Held</u>:  The State trial court's decree does not bind
this Court for Federal estate tax purposes.  Further, P has
failed to overcome the presumption of joint tenancy with

right of survivorship created by the deeds under California law.

Held, further:  To deal with the inherent characteristics of joint tenancy with right of survivorship, sec. 2031, I.R.C., and sec. 2040, I.R.C., provide an explicit approach to valuing joint tenancy.  Fractional interest discounts and lack of marketability discounts are inapplicable to the valuation of joint tenancy under sec. 2040(a), I.R.C.

Held, further:  P is liable for the addition to tax for late filing under sec. 6651(a), I.R.C.

Lance M. Weagant and Randall D. Fowler, for petitioner.

Dwight M. Montgomery, for respondent.

WRIGHT, Judge:  Respondent determined a deficiency of $154,545 in petitioner's Federal estate tax and an addition to tax under section 6651(a)[1] in the amount of $38,636.  After concessions by the parties, the issues remaining are:

(1)  Whether decedent's property interest in the Young Property was an interest in joint tenancy or in community property.  We hold that decedent held the property in joint tenancy.

(2)  Whether a fractional interest discount or a lack of marketability discount is applicable to the Young Property.  We hold that a discount is inapplicable.

---

[1]  All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

(3) Whether petitioner is liable for an addition to tax for late filing under section 6651(a). We hold that petitioner is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Tsai-Hsiu Hsu Yang (Yang), also known as Tsai-Hsiu Hsu Young, is executrix of the estate (petitioner) of Wayne-Chi Young, deceased (decedent). Yang was decedent's wife (collectively the Youngs). At all material times, Yang and decedent were residents of the State of California, a community property State. At all times relevant to this case, neither decedent nor Yang was a citizen of the United States, but they were residents of the United States.

Decedent died on June 28, 1989. At the time of decedent's death, the executrix Yang knew that the assets of the estate exceeded $1,200,000. On March 21, 1990, petitioner filed Form 4768, Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes, requesting an extension of time to file the return and to pay the estate tax to March 28, 1991. On April 11, 1990, respondent approved petitioner's application for extension of time to file and pay. Before March 28, 1991, petitioner filed a second Form 4768, requesting an additional extension to file the return and

to pay the estate tax to March 28, 1992. On April 4, 1991, respondent denied petitioner's application for extension of time to file, but approved the application for extension to pay. On September 6, 1991, petitioner filed the estate's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. Wang, a certified public accountant, helped in petitioner's filing of the return.

At the time of decedent's death, decedent and Yang owned the following five real properties (collectively the Young Property), each of which they had acquired by deed as husband and wife, as joint tenants: (1) The Bixby Knolls Motel, located at 4045 Long Beach Boulevard in Long Beach, California, which was purchased by decedent and Yang on May 19, 1983; (2) a condominium located at 111 North Moore Avenue, #A, in Monterey Park, California, which was purchased by decedent and Yang on February 18, 1986; (3) the Oak Tree Inn located at 788 West Huntington Drive in Monrovia, California, which was purchased by decedent and Yang on August 25, 1987; (4) a condominium located at 3507 Birkdale in El Monte, California, which was purchased by decedent and Yang on September 2, 1988; and (5) a house located at 1635 Vallecito Drive in Hacienda Heights, California, which was purchased by decedent and Yang on March 13, 1989. At no time prior to decedent's death did decedent or Yang execute a writing to change their legal title, as husband and wife as joint tenants, in the properties.

On decedent's estate tax return, petitioner excluded one-half of the value of the Young Property, claiming decedent's property interest in the Young Property was in the nature of community property. Petitioner also claimed a fractional interest discount of 15 percent on the Young Property, citing Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982). Respondent determined that petitioner was not entitled to the fractional interest discount. The following table shows the value of each Young property less the proportion of value excluded from the gross estate as stated by petitioner and as determined by respondent.

| PROPERTY | Petitioner's Calculations | Respondent's Determination |
| --- | --- | --- |
| | Value of Property | Value of Property |
| (1)Bixby Knolls Hotel | $565,000 | $508,500 |
| (2) Condo-Monterey Park | 193,000 | 193,000 |
| (3) Oak Tree Inn | 3,300,000 | 3,300,000 |
| (4) Condo-El Monte | 160,000 | 160,000 |
| (5) House in Hacienda Heights | 555,000 | 570,000 |
| Less: | 1/2 Community Interest | 1/2 Interest |
| Less: | Propstra Discount of 15% | None |

Petitioner filed a spousal property petition in the Superior Court of California, County of Los Angeles, alleging that the Young Property was community property.  After a hearing, the Superior Court of California, County of Los Angeles, in a spousal property order dated October 8, 1991, found that the Young Property was "community property or quasi-community property belonging one-half (1/2) to each spouse and passing one hundred percent (100%) to TSAI-HSIU HSU YOUNG, the surviving spouse."

OPINION

Issue 1:  Joint Tenancy or Community Property

It has been established that what constitutes an interest in property held by a person within a State is a matter of State law.  Fernandez v. Wiener, 326 U.S. 340, 355-357 (1945); Poe v. Seaborn, 282 U.S. 101 (1930).  In Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), the Supreme Court held that State law as announced by the highest court of the State is to be followed.  "If there [is] no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State.  In this respect, it may be said to be, in effect, sitting as a state court."  Id. at 465 (citing Bernhard v. Polygraphic Co. of Am., Inc., 350 U.S. 198 (1956)).  On the other hand, once property rights are determined under State law, Federal law is utilized to decide the tax consequences.  Aquilino v. United

States, 363 U.S. 509, 512-513 (1960); Morgan v. Commissioner, 309 U.S. 78 (1940).

In this case with the Young Property being situated in California, California property law determines the nature of decedent's interest in the Young Property.  Under California law, a husband and wife may hold property as joint tenants,[2] tenants in common, or as community property.[3]  Cal. Civ. Code sec. 5104 (West 1984).  However, property cannot be both joint tenancy and community property, as these two types of interests are mutually exclusive.  Sandrini v. Ambrosetti, 244 P.2d 742, 750 (Cal. Dist. Ct. App. 1952); Schindler v. Schindler, 272 P.2d 566, 568 (Cal. Dist. Ct. App. 1954).

---

[2]  Joint Tenancy is defined as:

[a] joint interest owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself or herself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants.
Cal. Civ. Code sec. 683 (West 1984).

[3]  Community property is defined as "property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either."  Cal. Civ. Code sec. 687 (West 1982).

Under California law, property acquired by spouses during wedlock is statutorily presumed to be community property. Cal. Civ. Code sec. 5110 (West 1986). However, where a husband and wife take property by deed as joint tenants, the presumption of community property is rebutted. Schindler v. Schindler, supra at 568; Siberell v. Siberell, 7 P.2d. 1003, 1005 (Cal. 1932). Property held by husband and wife in joint tenancy form is subject to a rebuttable presumption that the character of the property is as set forth in the deed. Schindler v. Schindler, supra at 568. The presumption created by the deed may be rebutted by evidence that the character of the property was changed or affected by an agreement or common understanding, or inferred from the conduct and declarations of the spouses. Estate of Herzog v. Commissioner, T.C. Memo. 1992-193 (citing Estate of Blair v. Blair, 199 Cal. App. 3d 161, 244 Cal. Rptr. 627 (1988); Estate of Levine v. Levine, 125 Cal. App. 3d 701, 178 Cal. Rptr. 275 (1981); Estate of Wilson, 64 Cal. App. 3d 786, 134 Cal. Rptr. 749 (1976)). Parol evidence may be admitted to establish that the real property was intended to be community property though title was taken by husband and wife as joint tenants. United States v. Pierotti, 154 F.2d 758, 762 (9th Cir. 1946). However, there must be a mutual intent of the spouses to transmute their interests in the land into community property. Petersen v. Commissioner, 35 T.C. 962, 967 (1961). When evidence

is introduced indicating an intent to hold the property as community property, we must decide whether petitioner's evidence overcomes the presumption created by the form in which title was taken.  Id.

In this case, each deed of the Young Property stated that decedent and Yang took title as husband and wife, as joint tenants.  According to California law, this creates a rebuttable presumption that the Young property was joint tenancy as stated in the deeds.  To rebut this presumption, petitioner relies on the Superior Court of California's determination that the Young Property was community property and on the surviving spouse's testimony regarding the intent of the parties.

Superior Court Decree:

Following decedent's death, petitioner filed a spousal property petition in the Superior Court of California, County of Los Angeles.  In the spousal order, the court found that the Young Property was "community property or quasi-community property belonging one-half (1/2) to each spouse and passing one hundred percent (100%) to TSAI-HSIU HSU YOUNG, the surviving spouse."  Petitioner argues that the Spousal Property Order entered by the Superior Court of the State of California precludes respondent from arguing that the Young Property was joint tenancy under California law.

In determining the binding or persuasive effect of State court decrees on Federal courts, interpreting the application of State law, the Supreme Court has acknowledged that where State law governs the ownership of property (as here), the State's highest court is the best authority on its own law. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). A Federal court in a Federal estate tax controversy is not conclusively bound by a State trial court's adjudication. Id. The ruling of an intermediate appellate State court is not to be disregarded by a Federal court unless it is considered that the State's highest court would decide otherwise. Id. If there is no decision by the State's highest court, the Federal court must do the best it can to discern what such State's highest court would decide. Id.; Estate of Rowan v. Commissioner, 54 T.C. 633, 636-639 (1970).

While a hearing occurred in regard to the petition, only the final order was submitted into evidence in regard to the California Superior Court's basis for its determination. Without other evidence, we cannot rule out that respondent, if present at the California Court, would have prevailed in opposing petitioner's petition that the property was community property. See Estate of Rowan v. Commissioner, supra at 638. The evidence before us does not show that the proceeding in the Superior Court was a bona fide, adversarial litigation. Therefore, we conclude

that we are not bound by the Superior Court of California's determination.

Intent of Parties:

Evidence is admissible to show that a husband and wife, who took property as joint tenants, actually intended it to be community property. Sears v. Rule, 163 P.2d 443, 449 (Cal. 1945); Tomaier v. Tomaier, 146 P.2d 905, 906 (Cal. 1944). Separate property may be converted to community property by oral agreement, proven by the acts and conduct of the parties in dealing with the property; however, the evidence must be sufficient to support a finding, adverse to record title. Bernatas v. Honnert (In re Bernatas' Estate), 328 P.2d 539, 541 (Cal. Dist. Ct. App. 1958). A mistaken belief about the nature of the property, or intent communicated to the other spouse about converting the property from one form to another, without more, will not rebut the presumption raised by the form of deed by which such property was acquired by husband and wife. Edwards v. Dietrich, 257 P.2d 750, 754 (Cal. Dist. Ct. App. 1953).

Petitioner primarily relies upon Yang's testimony. In her written statement, Yang stated that she and decedent always viewed the marital accumulations as "community property." According to Yang, the Youngs thought the property was community property.

At trial, Yang stated that her understanding was that the ownership of the property was such that "each one gets half." Upon divorce, "each one gets a half." If Yang predeceased decedent, then "he will become the executrix[or] or I could will to him or to the children." In regard to managing the Oak Tree Inn, Yang and decedent would hire a manager.

The Youngs were informed by real estate brokers that title should be taken as joint tenancy in order to avoid probate. However, at trial, Yang testified that she believed she relied on the broker's advice, but in regard to the Bixby Knolls Hotel, Yang could not remember whether the real estate broker told the Youngs to hold title in joint tenancy. Yang testified that they did not consult an attorney regarding title to the Young Property. In regard to title, she "[figured] it's -- belong to both of us."

Petitioner asserts that Yang's testimony at trial is consistent with her written statements regarding the mutual understanding and further asserts that no contrary evidence was presented by respondent. First, we note it is petitioner's burden to show that the Young Property was held other than as stated in the deed. We are presented with Yang's statement that "each one gets half." Petitioner did not present any other testimony to support Yang's statements. In evaluating her statements which were translated, we understand the language

barrier created because Yang cannot read, write, or speak English.  However, we are not satisfied that Yang understood the distinctions between community property and joint tenancy. Considering the record, we do not find a mutual understanding that decedent and Yang took title other than as stated in the deed.

Transmutation Into Community Property:

In California, the law is settled that a husband and wife may agree with respect to the character of the property which they hold and may transmute their property from one status to another by agreement.  Estate of Brockway v. Commissioner, 18 T.C. 488, 496 (1952)(citing In re Watkins Estate, 16 Cal. 2d 793, 797, 108 P.2d 417 (1940)), affd. 219 F.2d 400 (9th. Cir. 1954); Tompkins v. Bishop, 211 P.2d 14 (Cal. Dist. Ct. App. 1949).  See Cal. Civ. Code sec. 5110.710 (West 1983).[4]  To be valid, any such transmutation of real property occurring after December 31, 1984, must be made in writing by an express declaration and satisfy the other requirements in California Civil Code section 5110.730 (West 1984).[5]  See Orr v. Petersen (Estate of Petersen), 34 Cal.

---

[4] California Civil Code sec. 5110.710 (West 1983) was later repealed in 1993, but it was continued in California Family Code sec. 850(b) (West 1994).

[5] California Civil Code sec. 5110.730 was repealed and continued without substantive change in California Family Code sec. 852 (West 1994).  California Family Code secs. 850 and 852 were operative January 1, 1994.  Because decedent died in 1989,
(continued...)

Rptr. 2d 449, 455 (Cal. Ct. App. 1994).  An express declaration requires "language which expressly states that the characterization or ownership of the property is being changed." Bolton v. MacDonald (In re Estate of MacDonald), 794 P.2d 911, 918 (Cal. 1990).  On the other hand, transmutations occurring before January 1, 1985, do not need to be written.  Prior to January 1, 1985, there was little in the way of requisite formalities; all that was required was substantial credible and relevant evidence.  Weaver v. Weaver (In re Marriage of Weaver), 273 Cal. Rptr. 696, 699 (Cal. Ct. App. 1990) (citations omitted).

Out of the five properties constituting the Young Property, only the Bixby Knolls Motel was purchased prior to January 1, 1985.  Therefore, in regard to the other four properties, in order for a transmutation to be valid, it must be made in a writing by an express declaration.  Petitioner admitted that at no time prior to decedent's death in June of 1989, did decedent or Yang execute a writing to change their legal title, as husband and wife as joint tenants, in the properties.  Further, petitioner did not present any other writing which would satisfy the express declaration requirement.  We find that there was no valid transmutation for the following parcels of the Young Property, which were acquired after December 31, 1984:  (1) Condo

[5](...continued)
California Civil Code secs. 5110.710 and 5110.730 are the applicable sections.

at Monterrey Park; (2) Oak Tree Inn; (3) condo in El Monte; and (4) house in Hacienda Heights.

We reject petitioner's argument that the language in decedent's will transmuted the property from joint tenancy into community property. Petitioner points to the fact that decedent's will makes no mention of joint tenancy property, but refers to community property. Decedent's will was executed on July 18, 1985. As of that date, only one of the five properties making up the Young Property was owned by decedent and his wife. Further, the language in the will does not meet the standard of an "express declaration" to change characterization or ownership of property. The will merely provides that all of decedent's properties, both real and personal, be devised to Yang. This provision and the provision referring to decedent's one-half interest in the community property have no impact on decedent's interest held in joint tenancy property. We find decedent's failure to mention "joint tenancy"[6] in his will to be of little significance because under the law, joint tenancy cannot be devised.

---

[6] We note that decedent provided that inheritance, estate, or other death taxes attributable to the probate estate and to "any property or transfer of property outside my probate estate" be paid. The language "property outside my probate estate" implies that decedent's property might pass outside the probate estate, which would cover joint tenancy with right of survivorship.

In regard to the Bixby Knolls Motel, which was purchased on May 19, 1983, there was no evidence presented to establish that decedent and Yang transmuted the Bixby Knolls Motel into community property by an agreement, oral or written, prior to January 1, 1985. There was no evidence presented to support a finding that decedent and/or Yang intended to transmute the Bixby Knolls Motel into community property.

Therefore, we find that the Youngs did not effectively transmute the Young Property from joint tenancy into community property.

Conclusion:

From the record, we conclude that the evidence presented by petitioner has not overcome the presumption of joint tenancy. Therefore, decedent and Yang held the Young Property as joint tenants with the right of survivorship.

Issue 2: Discount Issue

Having determined that the Young Property was held in joint tenancy under State law, we now turn to the Federal estate tax aspects of the case. In determining an estate's tax liability, the gross estate must be defined. Section 2031(a) provides that "the value of the gross estate of the decedent shall be determined by including to the extent provided for in this part [sections 2031-2046], the value at the time of his death of all property, real or personal, tangible or intangible, wherever

situated."  It provides that the time of valuation is at the date of decedent's death (or the alternate valuation date as provided by section 2032).

Value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Hall v. Commissioner, 92 T.C. 312, 335 (1989); Estate of Heckscher v. Commissioner, 63 T.C. 485, 490 (1975); sec. 20.2031-1(b), Estate Tax Regs.  The willing seller and the willing buyer are hypothetical rather than specific individuals or entities.  Estate of Bright v. United States, 658 F.2d 999, 1005-1006 (5th Cir. 1981).  The determination of value is to be made as of the valuation date, and knowledge of unforeseeable future events that may have affected the value cannot be attributed to the hypothetical buyer or seller.  Sec. 20.2031-1(b), Estate Tax Regs.

Real estate valuation is a question of fact to be resolved on the basis of the entire record.  Ahmanson Found. v. United States, 674 F.2d 761, 769 (9th Cir. 1981); Estate of Fawcett v. Commissioner, 64 T.C. 889, 898 (1975).  After determining the gross value of the property, there may be adjustments upward or downward for such factors affecting value as minority discounts, discounts for lack of marketability, control premiums, and

fractional interest discounts.[7]  See <u>Estate of Andrews v. Commissioner</u>, 79 T.C. 938 (1982) (discussing a minority discount); <u>Estate of Piper v. Commissioner</u>, 72 T.C. 1062, 1084-1086 (1979) (discussing a discount for lack of marketability for stock); <u>Estate of O'Keeffe v. Commissioner</u>, T.C. Memo. 1992-210 (discussing blockage discounts for works of art); <u>Estate of Salsbury v. Commissioner</u>, T.C. Memo. 1975-333 (discussing control premiums).  Petitioner bears the burden to show that respondent was incorrect in disallowing the fractional interest discount for the Young Property.  Rule 142(a).

Section 2031 directs attention to other sections to determine what property, and to what extent, is included in the gross estate.  Section 2033 provides that there shall be included in the value of the gross estate the value of all property to the extent of the decedent's interest therein at the time of his death.  Because at death the decedent does not own an interest in joint tenancy, section 2033 is inapplicable to joint tenancy.  Section 2040(a) provides in relevant part that the value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with the

---

[7]  Minority discount normally applies with respect to the ownership of stock comprising less than 50 percent of the voting stock of a closely held corporation, so the owner does not have significant control over the operations.  On the other hand, a control premium may be applicable when the block of stock represents control of the corporation.

right of survivorship by the decedent and any other person, except such part of the value that is attributable to the amount of consideration in money or money's worth furnished by the surviving joint tenant.  Sec. 2040(a); sec. 20.2040-1(a), Estate Tax Regs.  In applying that exception, the entire value of jointly held property is included in a decedent's gross estate unless the executor submits facts sufficient to show that property was not acquired entirely with consideration furnished by the decedent, or was acquired by the decedent and the other joint owner or owners by gift, bequest, devise, or inheritance. Wilson v. Commissioner, 56 T.C. 579, 586 (1971); sec. 20.2040-1(a)(2), Estate Tax Regs.  If part of the consideration is found to have been contributed by the surviving joint tenant, then the part of the value of the property as is proportionate to such consideration is excluded from the decedent's gross estate. Sec. 20.2040-1, Estate Tax Regs.

Notwithstanding section 2040(a), section 2040(b) provides that in the case of any qualified joint interest, the value included in the gross estate is one-half of the value of the qualified joint interest.  Section 2040(b)(2)(B) defines qualified joint interest to include property held by the decedent and the decedent's spouse as joint tenants with right of survivorship, but only if the decedent and the spouse of the decedent are the only joint tenants.  However, section

2056(d)(1)(B) provides that if the surviving spouse of the decedent is not a citizen of the United States, section 2040(b) shall not apply.

Having determined that the Young Property was held in joint tenancy, section 2040, along with section 2031, is applicable. Yang, the surviving spouse of decedent, held the Young property in joint tenancy with decedent. Because Yang is not a citizen of the United States, section 2056(d)(1)(B) applies, making section 2040(b) inapplicable. Instead, section 2040(a) is applicable.

During trial and respondent's opening brief, respondent relied on the application of section 2040(b). In the reply brief, respondent noted the mistake of relying on section 2040(b) and stated that section 2040(a) is applicable. In order to avoid prejudice to petitioner, respondent concedes the value of the joint tenancy included in the gross estate to be one-half of the entire value of the Young Property, not the full value.[8]

Normally, section 2040(a) starts with the full inclusion of the value of the joint tenancy in the gross estate of the first joint tenant to die. In order to reduce this inclusion, there is a strict tracing of contributions by the surviving joint tenant. Because petitioner and respondent were relying at trial upon the application of section 2040(b), the record that they presented

---

[8] While respondent noted the mistake on reply brief, during opening statement at trial, petitioner's counsel acknowledged the interplay of sec. 2040(b) and sec. 2056(d)(1)(B).

does not enable us to determine the contributions of the spouses as contemplated under section 2040(a).  In light of respondent's concession that the valuation of the joint tenancy in decedent's gross estate is to be one-half, we shall assume that Yang, the surviving spouse, traced one-half of the contributions for the Young Property.

Both parties have agreed on the value of each entire parcel included in the Young Property:  (1) Bixby Knolls Hotel $508,500; (2) Condo - Monterey Park $193,000; (3) Oak Tree Inn $2,750,000; (4) Condo - El Monte $160,000; and (5) House - Hacienda Heights $555,000.  The dispute between the parties that we must resolve is whether, and to what extent, a fractional interest discount or a lack of marketability discount, which has been allowed in regard to tenancy in common and community property, should be applied to decedent's property held in joint tenancy with right of survivorship.

Petitioner argues that section 2040 is an includability section, determining the interest in the gross estate, not a valuation section.  Petitioner notes that section 2040, like section 2033, contains the language "to the extent of the interest therein".  After determining the inclusion of property under section 2033 or 2040, petitioner argues that sections 2031, 2032, and 2032A determine the value.  Therefore, with the same goal in sections 2033 and 2040, petitioner argues that the

language of section 2040 cannot be construed to prohibit fractional interest discounts and lack of marketability discounts, while such valuation discounts have been allowed under section 2033.

In cases dealing with section 2033, the rationale for a fractional interest discount is based on the rights of the tenants in common under local law, arising from the unity of interest and unity of possession. A fractional interest discount may be appropriate when a partial interest in property would sell for less than its proportionate share. Estate of Iacono v. Commissioner, T.C. Memo. 1980-520. For example, decedent owns Real Property A with X as tenants in common. While decedent has an undivided one-half interest in the property, a willing buyer may discount the value of decedent's interest in Property A due to the fact that a buyer of such interest would own the property concurrently with the other tenant in common, and as such, there is the inconvenience of dealing with several owners, partition suits, and potential disagreements among the owners. See Estate of Barclay v. Commissioner, 2 B.T.A. 696 (1925); Estate of Youle v. Commissioner, T.C. Memo. 1989-138. Discounts for lack of marketability arise from the inherent difficulty in the sale of the asset.

In arguing for the application of fractional interest discounts and/or lack of marketability discounts in the context

of section 2040, petitioner primarily relies on the Court of Appeals for the Ninth Circuit's decision in Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982), where a fractional interest discount was allowed for community property under section 2033.

In Propstra, the Ninth Circuit upheld a 15-percent discount in the value of the decedent's undivided one-half interest in real property held as community property. Id. at 1253. The court noted that the Federal estate tax is an excise tax, levied on the privilege of transferring property at death. Id. at 1250 (citing Estate of Bright, 658 F.2d 999, 1001 (5th Cir. 1981)). The amount to be taxed is valued by the property actually transferred, rather than what is owned by the decedent before death, or the interest held by the legatee after death. Id. The Government argued that under a unity of ownership theory, a fractional interest discount was inapplicable because "one can reasonably assume that the interest held by the estate will ultimately be sold with the other undivided interest and that interest's proportionate share of the market value of the whole will thereby be realized." Id. at 1251. After considering the language of section 2031 and section 2033, the court was unwilling to impute "unity of ownership" principles for valuation purposes. Id. Further, the court looked at the "willing seller"

as a hypothetical seller, rather the estate or any of decedent's beneficiaries.  Id. at 1251-1252.

In Propstra, the court allowed a fractional interest discount for community property.  Contrary to petitioner's arguments, we find the situation presented in Propstra is not analogous to the current situation involving joint tenancy.

First, Propstra dealt with section 2033, which provides that the value of the gross estate shall include the value of all property to the extent of the interest therein held by the decedent at the time of his death, and not section 2040, the relevant provision in our case.  Section 2033 looks to the interest held by the decedent at his death.  With community property, each spouse owns a present vested one-half interest in the community property.  Their respective interests in such property are individually wholly owned (that is, separate property), so that the decedent has no interest, title or ownership, marital or otherwise, in the other's interest in the community property.  As a result under section 2033, one-half of the value of property held as community property (that being the decedent's interest in the property) is includable in a decedent's gross estate, and the surviving spouse's one-half of the value is excluded from decedent's gross estate.  In light of this, Propstra v. United States, supra, looked at the undivided one-half interest held by the decedent at his death.

On the other hand, joint tenancy is a distinct property interest from tenancy in common and community property.[9] The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. United States v. Jacobs, 306 U.S. 363, 370 (1939); Zeigler v. Bonnell, 126 P.2d 118, 120 (Cal. Dist. Ct. App. 1942). While a joint tenancy may be severed by mutual agreement or by a conveyance by one of the joint tenants during the lives of the joint tenants, the decedent cannot devise property held by the decedent and another in joint tenancy. Estate of Sullivan v. Commissioner, 175 F.2d 657 (9th Cir. 1949), revg. 10 T.C. 961 (1948). Joint tenancy has been characterized as a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. Id. The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. At the time of decedent's death, decedent's interest in the property is extinguished, with the joint tenancy automatically passing to the surviving joint tenant by the operation of law, avoiding the need for probate.

---

[9] For example, tenants in common own an undivided fraction of the whole property held as tenancy in common. On the other hand, joint tenants own the whole property subject to the rights of the others.

In order to include property held by a decedent in joint tenancy in the decedent's gross estate, Congress enacted section 202(c) in the Revenue Act of 1916, ch. 463, 39 Stat. 756,[10] the predecessor of the current section 2040.[11]  The enactment of the

_____

[10]  Sec. 202(c) of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 778, provided that the gross estate included:

SEC. 202(c).  To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent.
    For the purpose of this title stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States, and any property of which the decedent has made a transfer or with respect to which he has created a trust, within the meaning of subdivision (b) of this section, shall be deemed to be situated in the United States, if so situated either at the time of the transfer or the creation of the trust, or at the time of the decedent's death.

[11] Sec. 2040(a) reads as follows:

SEC. 2040(a).  General Rule.--The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less

(continued...)

Federal estate tax was part of the Revenue Act of 1916, ch. 463, 39 Stat. 756; the act's main purpose was to raise revenue.  Since its origin in 1916, the provision including joint tenancy in the gross estate, now incorporated in section 2040(a), has remained substantially unchanged.[12]

---

[11](...continued)
than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: _Provided further_, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants with right of survivorship and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joints tenants with right of survivorship.

[12]  In 1919, sec. 202(c) was renumbered sec. 402(d), and the second paragraph dealing with stock in a domestic corporation was deleted.  In the Revenue Act of 1921, ch. 134, sec. 402(d), 42 Stat. 227, 278, sec. 402(d) read as follows:

SEC. 402(d).  To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been _received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth_: _Provided_, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than a fair consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: _Provided, further_, That where any

(continued...)

The constitutionality of the inclusion of the full value of a joint tenancy in decedent's gross estate has been addressed by the Supreme Court.  In holding that the full value of a joint tenancy and a tenancy in the entirety may constitutionally be included in decedent's gross estate, the Supreme Court said:

> The question * * * is, not whether there has been, in the strict sense of that word, a "transfer" of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights.
> * * * * * * *
> At * * * [the joint tenant's] death, however, and because of it, * * * [the survivor], for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law * * *.  Thus the death of one of the parties to the tenancy became the "generating source" of important and definite accession to the property rights of the other.

---

[12](...continued)
property has been acquired by gift, bequest, devise, or inheritance, as a tenancy in the entirety by the decedent and spouse, or where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of one-half of the value thereof; * * * [Emphasis added to show the added language by the Revenue Act of 1921]

The purpose of the added language was to "remove uncertainties in the existing law relating to the interests held jointly or as tenants in the entirety."  S. Rept. 275, 67th Cong., 1st Sess. (1921), 1939-1 C.B. (Part 2) 181, 198.

In 1924, the provision was renumbered sec. 302(e), and it was "reworded to secure greater clarity."  S. Rept. 398, 68th Cong., 1st Sess. (1924), 1939-1 C.B. (Part 2) 266, 290.  In the 1939 Code, the provision became sec. 811(e)(1).  Then in 1954, the provision became sec. 2040(a).

Tyler v. United States, 281 U.S. 497, 503-504 (1930). The possession by the decedent of the right of survivorship justifies the inclusion in the decedent's gross estate due to its "generating source."

Congress has the power to levy a tax upon the occasion of a joint tenant's acquiring the status of survivor at the death of the other joint tenant. United States v. Jacobs, 306 U.S. 363, 367 (1939).

> [The] termination of a joint tenancy marked by a change in the nature of ownership of property was designated by Congress as an appropriate occasion for the imposition of a tax. * * * It is immaterial that Congress chose to measure the amount of the tax by a percentage of the total value of the property, rather than by a part, or by a set sum for each such change. The wisdom both of the tax and of its measurement was for Congress to determine.

Id. at 371.

In arguing that section 2040 is a mere includability section, petitioner focuses on the language in "to the extent of the interest therein." According to petitioner, section 2040 merely determines the interest to be included in decedent's gross estate. In light of similar language in section 2033, petitioner argues that discounts should be available to joint tenancy under the valuation provision of section 2031.

We think petitioner's focus is incomplete. In addition to the cited language, section 2040(a) also provides the following introductory language: "The value of the gross estate shall include the value of all property to the extent of the interest

therein held as joint tenants with right of survivorship <u>by the decedent and any other person</u>". (Emphasis added.) While petitioner categorizes section 2031 as the only section to determine value and section 2040 as a mere inclusion section, we conclude that determining value is dependent on examining both section 2031 and section 2040.

Section 2031 provides the starting point, but it is very broad. In section 2031's accompanying regulations, we learn that value is determined by looking at the willing buyer and the willing seller, which then needs to be considered in conjunction with sections 2033 through 2044. Sec. 20.2031-1(b), Estate Tax Regs.

In light of this definition of value, (i.e., the willing buyer and the willing seller), we go to section 2040. In section 2040, Congress provided an explicit approach to valuing joint tenancy to be included in the decedent's gross estate. Unlike section 2033 which looks to the actual interest held by the decedent alone (i.e., one-half, one-third, or one-fourth interest), section 2040(a) starts with the inclusion of the entire value of the joint tenancy property held by the decedent and any other person in the gross estate of the first joint tenant to die, and the amount to be excluded from the decedent's gross estate is proportionate to the consideration furnished by the surviving joint tenant. If part of the value of the property

is shown to be attributable to consideration furnished by the survivor, the amount to be excluded from the gross estate is that portion of the entire date-of-death value of the property which the consideration furnished by the survivor bears to the total cost of acquisition and capital additions.  Sec. 2040(a); sec. 20.2040-1(a), Estate Tax Regs. (stating for section 2040 purposes, "it makes no difference that the survivor takes the entire interest in the property by right of survivorship and that no interest therein forms a part of the decedent's estate for purposes of administration.  The section [2040] has no application to property held by the decedent and any other person (or persons) as tenants in common".).  The exclusion for the "consideration furnished" by the other joint tenant can be expressed mathematically as follows:

Entire value of Property      TIMES  Survivor's consideration     = Amount
(on the date of death or              Entire Consideration Paid     Excluded
alternate valuation date)

Estate of Goldsborough v. Commissioner, 70 T.C. 1077, 1082 (1978), affd. without published opinion 673 F.2d 1310 (4th Cir. 1982).

Under the scheme of section 2040(a), the amount includable in a decedent's gross estate does not depend on a valuation of property rights actually transferred at death, or on a valuation of the actual interest held by the decedent (legal title); instead, decedent's gross estate includes the entire value of

property held in a joint tenancy by him and any other person, except to the extent the consideration for the property was furnished by such other person.  See Estate of Peters v. Commissioner, 386 F.2d 404, 407 (4th Cir. 1967), affg. 46 T.C. 407 (1966).  Contrary to petitioner's argument, the statute does not inquire how much a willing buyer would pay to purchase the decedent's interest in the joint tenancy at the date of his death, because, at the moment of death, decedent no longer holds any interest in the property.  The property passes by right of survivorship, unlike property governed by section 2033 which passes under a decedent's will or by intestate succession.  Even if prior to death, decedent sold his interest in the joint tenancy (and by doing so severed the joint tenancy with right of survivorship), the value that a willing buyer would pay does not necessarily compare to the approach taken by Congress in section 2040.[13]  Section 2040(a) provides an artificial inclusion of the joint tenancy property:  the entire value of the property less any contribution by the surviving joint tenant.  Except for the statutory exclusions in section 2040(a), there is no further

---

[13]  For example, A and B held Property X as joint tenants. The property was purchased with funds provided solely by A. During A's life, A could sell his interest for roughly one-half of the entire value.  However, if A predeceases B, the inclusion in A's gross estate would be 100 percent.

allowance to account for the fact that less than the entire interest is being included.[14]

As a result of this artificial inclusion, we conclude that section 2040 is not concerned with quantifying the value of the fractional interest held by the decedent (as would be the case under section 2033). The fractional interest discount, as applied in section 2033, is based on the notion that the interest is worth less than its proportionate share, due in part to the problems of concurrent ownership. These problems are created by the unity of interest and unity of possession. However, at the moment of death, the co-ownership in joint tenancy is severed, thus alleviating the problems associated with co-ownership. We

---

[14] Similarly, sec. 2040(b) also provides its own rules. It provides that the value included in the gross estate is "one-half of the value of such qualified joint interest." Once the parties have determined the value of the qualified joint interest, then this is merely divided in half to determine the amount included in decedent's gross estate.

Under sec. 2040(b), an estate would not argue that a market discount applied due to the interplay of the marital deduction and the step-up in basis. While one-half of the value of the joint tenancy is included in the gross estate, there is an accompanying marital deduction in the same amount. The marital deduction sec. 2056 provides that in determining the value of decedent's gross estate, there is allowed a deduction for the value of any interest that is included in gross estate and that passes from the decedent to the surviving spouse. Under sec. 1014, the surviving spouse has a step-up in basis for the portion of the joint tenancy included in decedent's gross estate. On the other hand, the marital deduction is inapplicable when the surviving spouse is not a citizen of the United States. At the same time, sec. 2040(b) is inapplicable in that situation.

conclude that the Young Property is not entitled to a fractional interest discount.

Similarly, a lack of marketability discount arises from an inherent difficulty in the sale of the asset.  It has been applied in determining the value of works of art and the value of restricted securities.  See, e.g., Estate of O'Keeffe v. Commissioner, T.C. Memo. 1992-210.  In regard to the Young Property, there is no inherent difficulty in its sale.  We conclude that a lack of marketability discount is not applicable to the Young Property.

Petitioner argues that respondent's position is based on the unity of ownership theory; i.e., the theory that because the surviving joint tenant succeeds to the interest of the deceased joint tenant, there can be nothing to apply a fractional interest discount against.  We note that the unity of ownership theory has been rejected by the courts, as in Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982), but we do not characterize respondent's position as relying on the unity of ownership theory.  Instead, we are looking at the inherent property characteristics of joint tenancy and the approach taken by Congress to value the property under section 2040 and section 2031.

We conclude that a fractional interest discount and a lack of marketability discount are inapplicable to the Young Property.

Issue 3:  Section 6651(a)

Section 6651(a)(1) imposes an addition to tax for the failure to file an estate tax return within the time prescribed by law, including any approved extension.  The rate of the addition to tax is 5 percent of the amount of tax required to be shown on the return for each month or fraction thereof that the return is late, not to exceed 25 percent in the aggregate. However, if the delinquency is due to reasonable cause and not due to willful neglect, the addition to tax is not imposed.  As the legal standard for reasonable cause, the regulations call on taxpayers to show that they used "ordinary business care and prudence".  Sec. 301.6651-1(c)(1) and (2), Proced. & Admin. Regs. Willful neglect is defined to mean a conscious, intentional failure or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245 (1985).  Whether petitioner acted with reasonable cause and not due to willful neglect is a question of fact. Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 425 (1993), affd. in part and revd. in part 51 F.3d 597 (5th Cir. 1995). Petitioner bears the burden of showing that (1) that the failure did not result from willful neglect and (2) that the failure was due to reasonable cause.  Rule 142(a); United States v. Boyle, supra at 245 (1985).

Section 6018(a) provides that an estate tax return shall be made if "the gross estate at the death of a citizen or resident

exceeds $600,000".  Section 6075(a) provides that the estate tax return shall be filed within 9 months after the date of the decedent's death.  Generally, an extension to file cannot exceed 6 months.  Sec. 6081(a).

Decedent died on June 28, 1989.  Petitioner was granted an extension to file the estate tax return until March 28, 1991; however, petitioner did not file the return until September 6, 1991.  As a result of filing the estate tax return more than 5 months late, petitioner is subject to a 25-percent addition to tax, unless the delinquency was due to reasonable cause and not due to willful neglect.

In order to avoid the penalty, petitioner's argument is based on Yang's claim that she relied on the accountant Wang's advice.  According to Yang, Wang stated that the estate tax return might be required, depending on the value of the Oak Tree Inn.  With litigation pending in regard to the Oak Tree Inn, Wang in 1990 suggested that an extension to file be submitted, which was ultimately granted, extending the filing date until March 28, 1991.  Later, in the summer of 1990, Wang told Yang that no Estate Tax Return would be due.  Then according to Yang, "[b]ased upon Mr. Wang's advice that the Estate Tax Return would probably not be required, I did not ask him again about the matter.  I felt that I could rely on Mr. Wang's advice because of his

education, apparent competency, and our longstanding and mutually productive relationship."

Petitioner contends that respondent did not present any evidence to contradict that she reasonably relied upon her accountant's advice. However, as we have noted, the burden of proof is on petitioner to establish (1) that the failure did not result from willful neglect and (2) that the failure was due to reasonable cause. In light of this burden, we note that petitioner did not call the accountant to testify to corroborate Yang's testimony. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In light of Yang's uncorroborated testimony, we consider the following facts to evaluate whether petitioner has met the burden of proving that Yang reasonably relied upon the accountant's advice.

The executrix Yang admitted that she knew that decedent's assets totaled more than $1,200,000 at his death. This clearly meets the filing threshold as required by law. Petitioner contends that the executrix relied upon the accountant's statement that "the Estate Tax Return would probably not be required."

To support its position, petitioner relies on <u>United States v. Boyle</u>, <u>supra</u> at 250. In <u>Boyle</u>, the executor argued that the failure to file the return was due to reasonable cause, reliance

on his attorney.  Id. at 244.  The Supreme Court noted that
engaging an attorney to assist in the probate proceedings is
plainly an exercise of the ordinary business care and prudence as
described by the regulations.  Id. at 250.  The Court continued
to say:

>        When an accountant or attorney advises a taxpayer on a
> matter of tax law, such as whether a liability exists, it is
> reasonable for the taxpayer to rely on that advice.  Most
> taxpayers are not competent to discern error in the
> substantive advice of an accountant or attorney.
> * * *
>        By contrast, one does not have to be a tax expert to
> know that tax returns have fixed filing dates and that taxes
> must be paid when they are due.  In short, tax returns imply
> deadlines.  Reliance by a lay person on a lawyer is of
> course common; but that reliance cannot function as a
> substitute for compliance with an unambiguous statute. * * *

Id. at 251.  The Court held that reliance on an agent was not
reasonable cause for failing to perform a nondelegable duty of
filing the return.  Id. at 252.

       When a taxpayer shows that he reasonably relied on the
"advice" of an accountant or attorney, even when such advice
turned out to be mistaken, courts have frequently held that such
reliance constitutes reasonable cause if the executor did not
merely assign the nondelegable duty to file to the attorney or
accountant.  Estate of La Meres v. Commissioner, 98 T.C. 294, 314
(1992).  To support its position of reliance on Wang's erroneous
advice, petitioner cites the following cases: Estate of La Meres
v. Commissioner, supra; Housden v. Commissioner, T.C. Memo. 1992-
91; and Estate of DiPalma v. Commissioner, 71 T.C. 324 (1978).

In all three cases, the Court found that the taxpayer's good faith reliance on the attorney's erroneous advice constituted reasonable cause. These cases were distinguishable from Boyle and other cases in which the taxpayer simply delegated all responsibility for filing to an agent. Estate of La Meres, supra at 319. In Estate of DiPalma, the attorney for the estate led the executrix to believe that pending litigation justified delaying the filing of the estate tax return. Petitioner compares this to the present situation, where Wang advised petitioner that no estate tax return would be due because of the Oak Tree Inn litigation.

The inquiry is whether petitioner relied in good faith on the accountant's advice with respect to the filing requirement. The principal difficulty which we have with petitioner's arguments is that the objective evidence does not necessarily lead us to the conclusion that Yang was unaware that the return was due. See Estate of La Meres, supra at 316-317. Examining the chronology of events, we note that decedent died on June 28, 1989. On March 21, 1990, petitioner filed for an extension of time to file and to pay the estate tax to March 28, 1991. On April 11, 1990, respondent approved the Estate's application for extension of time to file and pay. According to Yang, in the summer of 1990, Wang told Yang that a return would not be due, and as a result of this statement, Yang did not ask Wang about

the matter again. However, this contradicts the events that transpired in 1991. Prior to the lapse of the first extension (before March 28, 1991), Yang as the executrix filed an application for a second extension of time to file the return to March 28, 1992, but respondent denied the extension of time to file on April 4, 1991. As a result, the executrix knew that the second request was denied, resulting in the return being due by March 28, 1991. This is distinct from the facts presented in Estate of La Meres, where the respondent did not notify petitioner about the denial of the second extension until the audit. Id. at 321. We think a prudent taxpayer upon notification that the second extension was denied would have inquired further and would not have relied upon Wang's statement that a return would not be due.

Further, while in Yang's affidavit she stated that she relied on Wang's advice "because of his education, apparent competency, and our longstanding and mutually productive relationship," her testimony at trial was less persuasive. During trial, Yang testified that Wang had performed tax services for the Youngs, but she was unaware of Wang's educational background, such as where he attended school and whether he had a master's degree in taxation. While Yang was aware that Wang was a certified public accountant, her testimony was unclear whether she based her reliance on that fact. See Sanders v.

Commissioner, 21 T.C. 1012, 1019 (1954), affd. 225 F.2d 629 (10th Cir. 1955).

Accordingly, we hold on this record that petitioner has not carried its burden of proof that the delinquent filing of the estate tax return was due to reasonable cause and not to willful neglect. Therefore, petitioner is liable for the addition to tax under section 6651(a).

To reflect the foregoing,

Decision will be entered under

Rule 155.