T.C. Memo. 2006-156

UNITED STATES TAX COURT

RONALD A. AND CAROL J. LEHRER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2381-04.                    Filed July 31, 2006.

John Gigounas and Edward B. Simpson, for petitioners.

Margaret A. Martin, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  Respondent determined deficiencies in
petitioners' Federal income tax and accuracy-related penalties
under section 6662(a)[1] for 1999, 2000, and 2001 (the years at

_____

[1]All section references are to the Internal Revenue Code
(Code) for the years at issue, and all Rule references are to the
(continued...)

issue). For 1999, respondent determined a $650,411 deficiency and a $130,082 accuracy-related penalty. For 2000, respondent determined a $1,013,341 deficiency and a $202,668 accuracy-related penalty. For 2001, respondent determined a $1,240,280 deficiency and a $247,936 accuracy-related penalty.

The parties have resolved all issues regarding the substantial deficiencies, and petitioners have conceded that respondent has met his burden of producing evidence that petitioners substantially understated their income tax for each of the years at issue. The sole issue for decision is whether petitioners had reasonable cause for, and acted in good faith with respect to, their understatements of income tax for the years at issue. We find that they did not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners resided in Byron, California, at the time they filed the petition.

Ronald A. Lehrer (petitioner) has a high school education and has never taken any business or tax courses. He formed Lehrer & Sons Construction Co. (the construction business) as a sole proprietorship around 1995, soon after becoming a licensed

[1](...continued)
Tax Court Rules of Practice and Procedure, unless otherwise indicated.

contractor. Mary Ann Irussi, a local accountant, prepared tax returns for petitioners for 1995 and 1996, the years the construction business began operations. The gross revenues from the construction business ranged from $2.5 million to $3 million, and petitioners owed about $45,000 in Federal and State income taxes each year Ms. Irussi prepared returns for petitioners.

Petitioner was not satisfied with Ms. Irussi's services for several reasons. Petitioner stated that he wanted a return preparer who would be more responsive to his needs, timely answer his questions, and reduce his income tax liability. Petitioner did not check with any local accountants or professional return preparers. Instead, a relative told petitioner that a tax preparer named Anthony Borrelli from St. Louis, Missouri, would reduce petitioners' taxes. Petitioner contacted Mr. Borrelli by telephone a few times, and the two spoke for approximately one-half hour each time. Mr. Borrelli mentioned Code provisions, and petitioner assumed Mr. Borrelli was familiar with them. Petitioner hired Mr. Borrelli without determining whether he had the education, experience, or credentials to prepare returns professionally. Petitioner never asked Mr. Borrelli to provide references or information regarding Mr. Borrelli's credentials or experience.

Mr. Borrelli prepared returns for petitioners for the years at issue. Mr. Borrelli provided petitioners with a tax organizer

he requested they complete. Petitioners completed the tax organizer and sent all their records to Mr. Borrelli as requested. Petitioners reported gross revenues from the construction business of approximately $3.5 million in 1999, $2.7 million in 2000, and $3.4 million in 2001 on Schedules C, Profit or Loss from Business. Additionally, petitioner was day trading during the years at issue. Petitioners reported a $44,004 net gain in 1999, a $313,715 net loss in 2000, and a $377,079 net loss in 2001 from petitioner's day trading on Schedules D, Capital Gains and Losses. The returns reported a zero income tax liability for 1999, a $1,523 income tax liability for 2000 (entirely offset by a claimed earned income credit of $2,353), and a $2,325 income tax liability for 2001.

Petitioner said "alarm bells did go off" when the returns Mr. Borrelli prepared resulted in such reduced tax liabilities compared to those on the returns Ms. Irussi had prepared. Petitioners spent only minutes in reviewing the returns Mr. Borrelli prepared. They focused exclusively on determining whether a refund or tax was due and where they needed to sign. In addition, petitioners failed to notice that a $53,000 gain from the sale of real property, for which they had provided documentation to Mr. Borrelli, was omitted from the return for 1999. Petitioners did not question how Mr. Borrelli managed to reduce their income tax liability despite consistent gross

revenues from the construction business in the millions of dollars.

Petitioner began to question Mr. Borrelli's tax preparation methods only in 2001. Petitioner asked another accountant, Ed Lampe, to review the return for 2000 that Mr. Borrelli had prepared. Mr. Lampe informed petitioner that a few things on the return caused him concern about Mr. Borrelli. The return reported not only did petitioners owe no taxes, but that petitioners were claiming an earned income credit, despite the $2.7 million Schedule C gross revenues. Petitioner became concerned about Mr. Borrelli after hearing from Mr. Lampe, but petitioner did not fire Mr. Borrelli at that time.

Unbeknownst to petitioners, Mr. Borrelli was arrested and charged in 2002 for filing fraudulent tax returns. In November 2002, respondent sent a letter to petitioners notifying them that they were under audit for the years at issue. Petitioners relied on Mr. Borrelli to represent them, but they ultimately fired him in November 2003 because of his mishandling of the audit. Mr. Borrelli has been serving a 33-month prison sentence for crimes relating to filing fraudulent returns since May 2004.

Respondent sent petitioners statutory notices of deficiency dated November 26, 2003, for the years at issue. Respondent determined increases in petitioners' taxable income of $1,664,834 in 1999, $2,508,952 in 2000, and $3,056,833 in 2001. Respondent

also determined that accuracy-related penalties applied because of the substantial understatements of income tax.

Petitioners timely filed a petition with this Court.

OPINION

Petitioners have conceded that they substantially understated their income tax under section 6662(a) and (b)(2) for each of the years at issue. The sole issue remaining is whether petitioners had reasonable cause for, and acted in good faith with respect to, the understatements. Petitioners argue that they reasonably relied on Mr. Borrelli, and therefore the accuracy-related penalties under section 6662 do not apply.

The taxpayer bears the burden of proving there was reasonable cause for an understatement of income tax and that he or she acted in good faith with respect to the understatement. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of the professional. Sec. 1.6664-4(b)(1), Income Tax Regs. Reasonable cause has been found when a taxpayer selects a competent tax adviser, supplies the adviser with all relevant information, and consistent with ordinary business care and

prudence, relies on the adviser's professional judgment as to the taxpayer's tax obligations. Sec. 6664(c); United States v. Boyle, 469 U.S. 241, 250-251 (1985); Estate of Young v. Commissioner, 110 T.C. 297, 317 (1998); Am. Props., Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. 262 F.2d 150 (9th Cir. 1958). To establish reasonable cause, the taxpayer must prove by a preponderance of the evidence that: (1) The adviser was a competent professional who had sufficient expertise to justify the taxpayer's reliance on him or her, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); Bowen v. Commissioner, T.C. Memo. 2001-247.

Petitioners hired Mr. Borrelli after a relative's recommendation and a few telephone conversations in which Mr. Borrelli cited some Code provisions. Petitioners introduced no evidence regarding Mr. Borrelli's credentials or his experience in preparing tax returns. Mr. Borrelli was not called as a witness at trial. In short, petitioners failed to introduce any credible evidence that Mr. Borrelli was a competent tax adviser with sufficient expertise to justify their reliance.

We now turn to whether petitioners provided necessary and accurate information to Mr. Borrelli. Petitioners sent Mr.

Borrelli the tax organizer he requested every year and additionally sent all supporting documentation requested. We find that petitioners provided Mr. Borrelli with the necessary and accurate information to prepare their income tax returns.

Finally, we address whether petitioners relied in good faith on Mr. Borrelli's advice. Petitioner stated he wanted a return preparer who would be more readily available and more responsive to his questions. Yet he chose Mr. Borrelli, who lives in St. Louis, Missouri, without evaluating any local northern California alternatives.

We find that petitioners failed to perform the due diligence that a reasonably prudent person would perform before hiring an income tax return preparer. Petitioner did little to investigate Mr. Borrelli's qualifications before hiring him. Petitioner did not determine whether Mr. Borrelli was a CPA or had relevant education and experience.

Although petitioner may have graduated only from high school, he has been managing a construction business generating millions of dollars in revenues for several years, and he personally engaged in hundreds of thousands of dollars of day trading during the years at issue. Petitioners' income tax liability went from more than $40,000 a year when Ms. Irussi prepared returns for them to essentially zero when Mr. Borrelli prepared the returns. Yet the gross revenues from the

construction business remained consistent. Petitioners offered no explanation for the reduced income tax reported on the returns other than the change in return preparer. We cannot excuse a taxpayer who makes little or no effort to discern whether the person the taxpayer has chosen to prepare a return is competent to give tax advice. We find that petitioners did not act in good faith in relying on Mr. Borrelli's advice.

Accordingly, we find that petitioners did not have reasonable cause for, nor did they act in good faith with respect to, the understatements of income tax. We therefore sustain respondent's determination that petitioners are liable for the section 6662(a) penalty for each of the years at issue.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under Rule 155</u>.