T.C. Memo. 1998-344


UNITED STATES TAX COURT


ESTATE OF MAX L. VAN TINE, DECEASED,
ANN VAN TINE, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20054-96.                    Filed September 28, 1998.


Howard L. Sanger and Christopher S. Manes, for petitioner.

Christine V. Olsen and Gordon L. Gidlund, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioner's estate tax of $126,885.

Decedent conveyed joint tenancies in three parcels of real property to his daughter several years before he died.  The sole issue for decision is whether decedent's daughter contributed

consideration equal to at least one-half of the total consideration that decedent and his spouse paid for the three parcels of real property. If so, one-half of the value of the three properties is excluded from decedent's estate under section 2040. Ann Van Tine performed valuable services for her father's construction business from 1955 to the 1970's, but the record does not show how much consideration decedent and his wife paid to buy and improve the three parcels. As a result, we have no basis to decide what part of the parcels' value that is attributable to Ann Van Tine's services. Thus, on this record, we hold for respondent.

Section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. The Van Tines

Ann Van Tine was born around 1937. She was the only child of decedent and Betty Van Tine. Ann Van Tine lived at home with her parents until 1980 when she was about 43. Her parents owned and operated Van Tine Construction (VTC), which built homes and commercial buildings. They paid for all of her basic personal needs, such as food and clothing. They bought and insured her vehicle. Ann Van Tine never attended college, married, or had children. Her hobbies were growing bonsai trees and keeping German Shepherd dogs.

At the time of trial, Ann Van Tine had carpal tunnel syndrome[1] in both hands and a disc problem in her back caused by construction work.

B.    Dr. Patricia Ebaugh

Patricia Ebaugh (Ebaugh) moved near the Van Tines in 1941 when Ebaugh was 17 and Ann Van Tine was 4.  Ebaugh became a very close friend of the Van Tine family.  They treated her like part of their family.  Ebaugh treated Ann Van Tine like a younger sister.

Ebaugh was a lab technician in Los Angeles until the mid-1950's.  She graduated from the University of Southern California in 1958.  She graduated from medical school in Philadelphia and was an anesthesiologist in Long Beach, California, from 1964 to 1972.  Ebaugh bought a home a few blocks from the Van Tines' home (Ebaugh's Rancho Palos Verdes home).

C.    Van Tine Construction

On July 17, 1959, the Van Tines filed articles of incorporation for M. L. Van Tine, Inc.  Ann Van Tine was a director of the corporation.  However, the Van Tines did not activate the corporation and continued to operate VTC as a proprietorship.

Albert Andrade (Andrade) was one of VTC's subcontractors. He installed driveways at residential homes and parking lots for

---

[1] Carpal tunnel syndrome is caused by using one's arms in a repetitive manner over a long period of time.

decedent and VTC for about 12 years from the late 1950's to the early 1970's. Andrade sometimes saw Ann Van Tine cleaning houses being built by VTC. VTC bought property and developed an office building in 1973. VTC developed property in Malibu, Torrance, Inglewood, Redondo Beach, and San Pedro, California, during the 1970's.

D. Ann Van Tine's Work for VTC and Other Activities

1. Ann Van Tine's Construction-Related Activities

Beginning when Ann Van Tine was in the 5th grade, decedent picked her up after school and took her to job sites where they stayed until dinner. When she was in high school, Ann Van Tine helped her father operate transit levels (used to measure the slope of land), install foundation forms, and do rough plumbing and rough electrical work. She did carpentry, framing, roofing, cement work, painting, and landscaping. Ann Van Tine received her driver's license in 1953 when she was 16 years old. At that time she began to pick up and deliver materials for VTC. She was supervising construction by the 1960's and obtaining materials for construction jobs. Her responsibilities to VTC and abilities grew steadily.

From the mid-1950's to around 1980, Ann Van Tine helped manage (e.g., rent, maintain, and landscape) apartments that VTC had built.

Decedent and Betty Van Tine occasionally discussed giving Ann Van Tine an interest in VTC property in exchange for her work

for VTC. In 1960, decedent and Betty Van Tine told Ann Van Tine that they wanted to give her a 50-percent joint interest in VTC property when they retired and that they hoped that she would continue to work for VTC.

In 1967, decedent and his partner, Bert E. Moore, Jr. (Moore) (not otherwise identified in the record), were building houses on three small tracts. Moore and decedent each supervised one site. Ann Van Tine supervised the completion of the houses on the third tract.

Ann Van Tine received no salary for her work for VTC. She never applied for a contractor's license, never was bonded, never signed a contract on behalf of VTC, and did not have regular hours or duties. She did not have signature authority on the VTC checking account. She was not listed as a beneficiary on any insurance contract for VTC properties. She did not do office work for VTC. Betty Van Tine managed the VTC office, kept the books, and answered the phone.

### 2. Ann Van Tine's Real Estate License

In 1967, Ann Van Tine obtained a real estate agent's license. She used it to show VTC properties to prospective buyers, to help potential buyers of VTC tract homes sell their present homes, to sell homes that VTC had built, and to help potential customers find lots for contract homes. She also sold property not owned by VTC.

3. <u>Ann Van Tine's Activities Unrelated to VTC</u>

During the 1950's and 1960's, Ann Van Tine engaged in activities unrelated to VTC, including providing landscaping services unrelated to VTC and selling bonsai trees part time. She worked for a real estate broker and received commissions for selling non-VTC properties. During the 1950's and 1960's, Ann Van Tine typically earned $1,500 to $4,000 a year from her activities unrelated to VTC. In some years she earned no income.

4. <u>Ann Van Tine's Work for Patricia Ebaugh</u>

Ann Van Tine began working for Ebaugh part time as a medical assistant in 1970. In 1972, Ebaugh moved to Palm Springs, California, to begin a family medical practice. Ann Van Tine helped Ebaugh negotiate the purchases of a home in Palm Springs and an office in nearby Cathedral City. Ebaugh asked Ann Van Tine to work with a contractor to build partitions for an office, a waiting room, and examination rooms. Ann Van Tine negotiated with the general contractor, decorated the office, advertised for and located a receptionist and nurse for Ebaugh, managed the office, and ordered supplies. Most of Ann Van Tine's work in the Palm Springs area was during weekends. Ann Van Tine helped sell Ebaugh's Rancho Palos Verdes home in 1972.

Ebaugh transferred her Palm Springs property to herself and Ann Van Tine as joint tenants on January 12, 1974. Ebaugh moved to Palm Desert, California, in 1975. Ann Van Tine helped Ebaugh

buy a home in Palm Desert and sell Ebaugh's Palm Springs home. On October 30, 1975, Ebaugh transferred her Palm Desert property to herself and Ann Van Tine as joint tenants.

In 1977, Ann Van Tine helped Ebaugh move her office from Cathedral City to Rancho Mirage, which is nearer to Palm Desert. She met with contractors and ensured that the office was established and decorated.

Ann Van Tine moved from the family home at 7 Diamonte Lane to Big Bear, California, late in 1979 or early in 1980. In 1989, Ann Van Tine and decedent began to live with Ebaugh in Palm Desert, California.

Ann Van Tine began to work for Ebaugh full time in 1982. Ebaugh paid her a total of more than $540,000 from 1970 to 1995 (an average of about $22,500 per year). See par. J, below.

At the time of trial, Ann Van Tine and Ebaugh lived together, shared a family trust, and commingled their funds. Ebaugh paid some of petitioner's attorney's fees in this case.

5. <u>Garrabrant House</u>

In 1980, Ann Van Tine oversaw VTC's construction of a home for Jean Garrabrant (Garrabrant), Betty Van Tine's sister. Ann Van Tine scheduled all of the subcontractors and inspected their work when they were finished.

E.   Betty Van Tine's Death; Decedent's Remarriage, Later Years, and Death

Betty Van Tine died unexpectedly in 1978.  Betty Van Tine's will was not probated because her property was held in joint tenancy with decedent.

Decedent married Omega Van Tine in 1981.  They lived at 7 Diamonte Lane.

Decedent's health began to decline in the early 1980's.  On September 20, 1982, Ebaugh wrote:  "[decedent] has been [complaining of] numerous medical problems recently from GI to heart to neck pain.  He appears to be upset.  No information forthcoming from wife.  His daughter is going to take a more active role in helping * * * business."

On February 25, 1986, decedent complained to Ebaugh that he was having trouble accomplishing everyday tasks.  On January 25, 1988, he complained that he had trouble remembering anything.

Ebaugh wrote:  "However, in 1988 the effects of the disease were limited primarily to recent memory loss.  He knew his daughter, his friends, and was completely capable of conducting the activities of daily living."

F.   Decedent's Income Tax Returns

On his income tax returns for 1979 and 1980 and 1989 to 1992, decedent reported receiving no income from contracting.[2]

---

[2] The record does not show whether decedent reported income
(continued...)

On the 1980 return, he deducted payments to someone other than Ann Van Tine for repairs, painting, and gardening at the 2255 Sepulveda Boulevard property, discussed below at paragraph G-2.

G.    The Joint Tenancy Properties

    1.    The 7 Diamonte Lane Property

In 1963, decedent and Betty Van Tine bought land at 7 Diamonte Lane in Rancho Palos Verdes, California, which they kept in their names.  In October 1963, decedent and his wife used this property as collateral for a $47,500 loan.  They used the loan to build homes at 7 Diamonte Lane and on the adjacent lot.

The Van Tine home at 7 Diamonte Lane had about 2,500-square feet, three bathrooms, and a three-car garage.  The home had a panoramic view of the Pacific Ocean.

Ann Van Tine lived at 7 Diamonte Lane until she moved to Big Bear, California, around 1979 or 1980.  Decedent lived at 7 Diamonte Lane until he moved to Palm Desert, California, around 1989.  Ann Van Tine continued to have important mail sent to 7 Diamonte Lane because the U.S. Postal Service did not deliver mail to her Big Bear cabin.  On December 27, 1988, decedent signed a deed which gave Ann Van Tine a joint tenancy in the property at 7 Diamonte Lane.  The deed creating Ann Van Tine's interest in the 7 Diamonte Lane property was recorded on February 22, 1989.

---

[2](...continued)
from contracting for 1981 to 1988.

Through a realtor, decedent leased the 7 Diamonte Lane property to tenants beginning in May 1988, and received all of the rents while he was alive. He died on May 9, 1993. It was leased until Ann Van Tine sold it in 1995.

2. 2255 Sepulveda Boulevard

In 1963, Daryl and Beverly Stark, George and Lucy Carrick, and decedent and Betty Van Tine bought property at 2255 Sepulveda Boulevard. In 1964, the Carricks, Starks, and Van Tines built an office building at 2255 Sepulveda Boulevard. In 1967, decedent and Betty Van Tine bought the Starks' and Carricks' interest in the property at 2255 Sepulveda Boulevard.

Decedent and Betty Van Tine borrowed $19,170 when they refinanced the 2255 Sepulveda Boulevard property in 1976. The 2255 Sepulveda Boulevard property was leased to commercial tenants by decedent and Betty Van Tine in 1978, and by decedent in 1979, 1980, 1988, and 1990-93.

Decedent gave Ann Van Tine a joint tenancy in the property at 2255 Sepulveda Boulevard on May 28, 1982. It was recorded on February 1, 1989.

3. 2243-45 Sepulveda Boulevard

In 1973, decedent and Moore bought property at 2243-45 Sepulveda Boulevard. Decedent and Moore used the property at 2255 Sepulveda Boulevard as collateral when they bought the property at 2243-45 Sepulveda Boulevard. Moore conveyed the property at 2243-45 Sepulveda Boulevard to decedent in 1980.

Decedent leased office space at 2243-45 Sepulveda Boulevard to commercial tenants until 1994 when the property was sold. There was no landscaping on the 2243-45 Sepulveda property.

Decedent executed a deed granting a joint tenancy in the property at 2243-45 Sepulveda Boulevard to Ann Van Tine on May 28, 1982. It was recorded on February 1, 1989. Thereafter, he continued to receive all the rent on the 2243-45 Sepulveda Boulevard property.

4. <u>The Joint Tenancy Deeds</u>

H. Louise Van Valkenberg (Van Valkenberg), Ebaugh's and decedent's accountant, usually went to Ebaugh's office each month to pick up and deliver paperwork. In 1982, Van Valkenberg brought the joint tenancy deeds to Ebaugh and asked her to put them in Ebaugh's safe deposit box and not record them. Van Valkenberg told Ebaugh to write a note on each deed stating that the transfer was for no consideration. Ebaugh did so. In addition, Ebaugh wrote on the 7 Diamonte Lane property deed that the transfer was a gift and the grantor received nothing in return.

Van Valkenberg died in 1987.

In 1988, decedent sought estate planning advice from Patricia Stoddard (Stoddard), an estate planning attorney, because he was beginning to have early symptoms of Alzheimer's disease. He wanted to arrange his estate while he had capacity. Stoddard told decedent that he could make nontaxable gifts each

year of $10,000 to Ann Van Tine, or he could simply let her inherit his property. Decedent told Stoddard that he believed that Ann Van Tine had earned a joint tenancy in the 7 Diamonte Lane property by working for VTC for many years. Decedent told Stoddard that he put the property at 7 Diamonte Lane in joint tenancy with Ann Van Tine to compensate her for work for VTC.

Ann Van Tine did not report her receipt of the joint tenancies as income on her individual income tax returns.

### H. The Big Bear Lots

Decedent, Betty Van Tine, Ann Van Tine, and Ebaugh built a small cabin on two small lots in the Big Bear area. Ann Van Tine and Betty Van Tine each owned one of the lots.

Ebaugh and Ann Van Tine bought about 27 small lots around the cabin. Each lot was about 30-feet wide and 80-feet deep. There were about 20 lots to an acre. The lots were intended to be used for family camping. Ann Van Tine and Ebaugh paid a total of about $35,000 for the 20 lots.

### I. Decedent's Death and Estate

Decedent signed his will on August 31, 1988. In it, he left any separate property and any community property he may have to Ann Van Tine. Decedent's disease worsened in 1989. He died on

May 9, 1993. His will was not probated because his property was held in joint tenancy.

Ann Van Tine was executrix of decedent's estate. She filed an estate tax return (Form 706) for the estate. On it, she excluded 50 percent of the value of the joint tenancy properties from decedent's gross estate. On August 17, 1993, Ann Van Tine filed an affidavit-Death of Joint Tenant, which allowed her to receive title for the 7 Diamonte Lane, 2243-45 Sepulveda Boulevard, and 2255 Sepulveda Boulevard properties. In calculating depreciation on her 1993 income tax return, Ann Van Tine took a full step-up in basis for the 7 Diamonte Lane and 2243-45 Sepulveda Boulevard properties and a 50-percent step-up for the 2255 Sepulveda Boulevard property and used the date of death values of the properties to compute her basis.

The fair market values of the three properties at issue on May 9, 1993 (decedent's date of death), were $215,000 for the 2243-45 Sepulveda Boulevard property, $345,000 for the 2255 Sepulveda Boulevard property, and $590,000 for the 7 Diamonte Lane property, for a total of $1,150,000.

Ann Van Tine sold the 2243-45 Sepulveda Boulevard property for $215,000 in 1994 and the 7 Diamonte Lane property for $580,000 in 1995. In reporting gain from the sale of the 7

Diamonte Lane and 2243-45 Sepulveda Boulevard properties, Ann Van Tine's accountant used the date-of-death value of the properties plus the cost of improvements as her basis.

Decedent did not file a gift tax return to report the transfer of the joint tenancy interest in the 7 Diamonte Lane, 2243-45 Sepulveda Boulevard, or 2255 Sepulveda Boulevard properties.

J.    Ann Van Tine's Income Tax Returns

Ann Van Tine reported a total of $540,118 in income from Ebaugh on her income tax returns from 1970 to 1995, as follows:

| Year | Income from Ebaugh | Year | Income from Ebaugh |
|------|------|------|------|
| 1970 | $7,450 | 1983 | $33,000 |
| 1971 | 7,450 | 1984 | 30,250 |
| 1972 | 5,000 | 1985 | 30,250 |
| 1973 | 6,988 | 1986 | 30,250 |
| 1974 | 6,530 | 1987 | 35,100 |
| 1975 | 8,450 | 1988 | 39,600 |
| 1976 | 11,050 | 1989 | 39,600 |
| 1977 | 16,750 | 1990 | 39,600 |
| 1978 | 18,000 | 1991 | missing |
| 1979 | 18,150 | 1992 | 40,800 |
| 1980 | 23,600 | 1993 | 31,500 |
| 1981 | 28,500 | 1994 | -0- |
| 1982 | 32,250 | 1995 | -0- |

Ann Van Tine reported that she lived at 7 Diamonte Lane from 1970 to 1985, and at Big Bear City from 1986 to 1995. She used the 7 Diamonte Lane address after she lived at Big Bear Lake.

She also reported that she was a medical assistant from 1970 to 1986 and a business manager or business consultant from 1988 to 1995.

On her 1970, 1971, and 1972 returns, Ann Van Tine deducted 12,000 miles of automobile expenses in connection with her work for Ebaugh.

OPINION

A.   Background

A decedent's estate includes the date-of-death value of property he or she owns jointly, except for any part of the value that the estate shows is attributable to consideration provided by the surviving joint tenant.  Sec. 2040(a);[3] sec. 20.2040-1,

---

[3] Sec. 2040(a) provides in part:

(a) General Rule.--The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such

(continued...)

Estate Tax Regs.[4]  The amount excluded from the gross estate is

_____

[3](...continued)
property as is proportionate to the consideration
furnished by such other person. * * *

[4] Sec. 20.2040-1(a), Estate Tax Regs., provides:

(a)  In general.  A decedent's gross
estate includes under section 2040 the value
of property held jointly at the time of the
decedent's death by the decedent and another
person or persons with right of survivorship,
as follows:

(1)  To the extent that the property was
acquired by the decedent and the other joint
owner or owners by gift, devise, bequest, or
inheritance, the decedent's fractional share
of the property is included.

(2)  In all other cases, the entire
value of the property is included except such
part of the entire value as is attributable
to the amount of the consideration in money
or money's worth furnished by the other joint
owner or owners.  See section 20.2043-1 with
respect to adequacy of consideration.  Such
part of the entire value is that portion of
the entire value of the property at the
decedent's death (or at the alternate
valuation date described in section 2032)
which the consideration in money or money's
worth furnished by the other joint owner or
owners bears to the total cost of acquisition
and capital additions.  In determining the
consideration furnished by the other joint
owner or owners, there is taken into account
only that portion of such consideration which
(continued...)

the part of the date-of-death value of the property which the consideration furnished by the survivor bears to the total cost of acquisition and capital additions.  Sec. 2040(a); <u>Estate of Young v. Commissioner</u>, 110 T.C. 297, 314 (1998); sec. 20.2040-1(a), Estate Tax Regs.  This can be expressed mathematically (mathematical formula) as follows:

Value of the property[1]
on the date of death or    X    $\dfrac{\text{Consideration furnished by the survivor}}{\begin{array}{l}\text{Total consideration paid to}\\ \text{acquire and improve the}\\ \text{property}\end{array}}$    =    Amount excluded
alternate valuation date

[1]The parties agree that the entire value of the properties at issue on the date of death is $1,150,000.

<u>Estate of Young v. Commissioner</u>, <u>supra</u> at 315; <u>Estate of Goldsborough v. Commissioner</u>, 70 T.C. 1077, 1082 (1978), affd.

---

[4](...continued)
        is shown not to be attributable to money or
        other property acquired by the other joint
        owner or owners from the decedent for less
        than a full and adequate consideration in
        money or money's worth.

        The entire value of jointly held property is
        included in a decedent's gross estate unless
        the executor submits facts sufficient to show
        that property was not acquired entirely with
        consideration furnished by the decedent, or
        was acquired by the decedent and the other
        joint owner or owners by gift, bequest,
        devise, or inheritance.

without published opinion 673 F.2d 1310 (4th Cir. 1982). Thus, to exclude 50 percent of the date-of-death value of the three properties at issue from decedent's estate, petitioner must prove that Ann Van Tine's services to VTC were worth at least 50 percent of the total consideration paid for the acquisition and improvement of three properties.

Under section 2040(a), a surviving family member may give consideration by providing services to a family business. Berkowitz v. Commissioner, 108 F.2d 319 (3d Cir. 1939), revg. and remanding a Memorandum Opinion of the Board of Tax Appeals; Richardson v. Helvering, 80 F.2d 548, 551 (D.C. Cir. 1935). Petitioner bears the burden of proof. Rule 142(a); see Estate of Heidt v. Commissioner, 8 T.C. 969, 974 (1947), affd. per curiam 170 F.2d 1021 (9th Cir. 1948).

B.   Whether Ann Van Tine Provided Substantial Services to Her Parents and VTC

1.   Parties' Contentions

The parties dispute whether Ann Van Tine provided substantial services to VTC. Petitioner contends that Ann Van Tine worked full time for VTC for more than 30 years and that her work was full and adequate consideration for her one-half interest in the three properties at issue. Respondent contends

that the services that Ann Van Tine performed for VTC were minimal.

2. Ann Van Tine's Work for VTC

Ann Van Tine worked for VTC without pay from around 1955, when she graduated from high school, until around 1980, when she moved to Big Bear. She did some work for VTC in the early 1980's, but less than in earlier years. She helped her father with all aspects of construction for VTC. She supervised construction of 17 houses for VTC in 1967, listed and sold houses that VTC built, and managed VTC's rental properties. She landscaped the homes and some of the office buildings that VTC built. She supervised construction of the home that VTC built for Garrabrant.

Ann Van Tine's hobbies and her work for Ebaugh before 1982 were minimal or generally occurred on weekends, and did not interfere with her work for VTC. We conclude that Ann Van Tine provided a substantial service to VTC.

3. Respondent's Contentions

a. Biased Testimony

Respondent contends that the testimony of Ann Van Tine and Ebaugh was self-serving, biased, and incredible.

We decide whether a witness is credible based on objective facts, the reasonableness of the testimony, the consistency of statements made by the witness, and the demeanor of the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). We may discount testimony which we find to be unworthy of belief, Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted, Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. in part and remanding 99 T.C. 370 (1992) and T.C. Memo. 1992-616. The testimony of all of petitioner's witnesses, Ann Van Tine, Ebaugh, Garrabrant, and Andrade, was consistent and plausible. There was nothing in the demeanor of petitioner's witnesses or the content of their answers that suggests that they were not being truthful.

Respondent contends that we should not believe Ebaugh's testimony because Ebaugh and Ann Van Tine lived together at the time of trial, they shared a trust and commingled funds, and Ebaugh paid some of petitioner's attorney's fees in this case. We disagree. We are not convinced that Ebaugh altered her testimony to help Ann Van Tine.

b.  Stoddard's Affidavit

The parties stipulated that we may treat Stoddard's affidavit as if it were her testimony.[5]  Stoddard's affidavit corroborates the testimony of petitioner's witnesses.

Respondent points out that respondent could not cross-examine Stoddard.  This objection, however, was in effect waived by the stipulation.  Respondent contends that we should disregard Stoddard's affidavit because it was written by petitioner's counsel or someone other than Stoddard.  We disagree.  There is no evidence to suggest anything in the Stoddard affidavit is untrue.

c.  Andrade's and Garrabrant's Testimony

Respondent points out that Andrade and Garrabrant saw Ann Van Tine cleaning up and delivering materials.  Respondent contends that Ann Van Tine's help to her father was only sporadic and menial.  We disagree.  We believe Ebaugh's and Ann Van Tine's testimony about the nature of Ann Van Tine's services to VTC.

---

[5] Respondent reserved a relevancy objection to Stoddard's affidavit.  Stoddard's affidavit is relevant because it tends to show that decedent intended to transfer a joint tenancy interest in the 7 Diamonte Lane property to Ann Van Tine as consideration for her work.

Andrade's and Garrabrant's testimony was consistent with that testimony.

d.   End of VTC's Construction Activities

Respondent contends that Ann Van Tine did not provide services beyond the early 1970's because, according to respondent, that is when VTC stopped its construction activities. Decedent was semiretired in 1981 but VTC built homes and managed apartments in the early 1980's.  On December 15, 1980, decedent told an IRS representative that he had some condominiums that would not be completed until 1981 or 1982.  On September 20, 1982, Ebaugh wrote a note evaluating decedent's medical condition in which she said:  "His daughter is going to take a more active role in helping * * * business."  Despite this, we believe Ann Van Tine did not provide a significant service to VTC after 1982. She moved from 7 Diamonte Lane to Big Bear around 1980.  She began to work full time for Ebaugh in 1982.  There is no evidence that VTC constructed anything after the Garrabrant home in 1980.

e.   Ann Van Tine's Other Activities

Respondent contends that Ann Van Tine could not have provided a significant service to VTC because she had many other activities including growing bonsai trees, keeping German

Shepherd dogs, landscaping, selling real estate, and working for Ebaugh. We disagree; the time she spent with those activities did not preclude her from working a substantial amount of time for VTC before 1980.

### 4.    Conclusion

We conclude that Ann Van Tine performed a substantial service for VTC over the years. However, that conclusion is not enough for petitioner to prevail for reasons discussed next.

C.    Whether Petitioner Has Shown That Ann Van Tine Furnished Consideration as Required by Section 20.2040-1(a), Estate Tax Regs.

1.    Whether Petitioner Has Shown How Much Ann Van Tine's Parents Paid To Buy and Improve the Three Properties

To exclude an amount from decedent's estate under section 2040(a), petitioner must show, among other things, the total consideration paid to acquire and improve the three properties. Sec. 2040(a); Estate of Young v. Commissioner, 110 T.C. at 314; sec. 20.2040-1(a), Estate Tax Regs. Ann Van Tine's parents bought the 7 Diamonte Lane property in 1962. They bought the

2255 Sepulveda Boulevard property in 1963 and built an office building on it in 1964.  Decedent and Moore bought the 2243-45 Sepulveda Boulevard property in 1973.  However, the record does not show how much Ann Van Tine's parents paid to buy and improve the three properties.[6]

## 2.   Petitioner's Contentions

Petitioner contends that it needs to show only that Ann Van Tine's services were more than minimal or part time.  Petitioner contends that we stated this standard in Estate of Anderson v. Commissioner, T.C. Memo. 1989-643, in which we applied section 2040 and section 20.2040-1, Estate Tax Regs.  We disagree.  In that case, the decedent gave her son a joint interest in property.  The decedent and her former husband paid $37,000 in 1955 to buy the property.  Estate of Anderson differs from this

---

[6] On her 1993 income tax return, Ann Van Tine reported that her basis for purposes of depreciation was $377,334 for 7 Diamonte Lane and $123,392 for each Sepulveda Blvd. property for a total of $624,118.  Petitioner does not contend that we can derive decedent's total cost to acquire and improve the properties from this return.

case because we knew how much decedent had paid for the property ($37,000). We concluded that the value of the decedent's son's services was sufficient to exclude one-half of the fair market value of the property from decedent's estate under section 2040(a). Here, we do not know how much Ann Van Tine's parents paid to buy and improve the property.

Petitioner points out that in Berkowitz v. Commissioner, 108 F.2d 319 (3d Cir. 1939), and Estate of Otte v. Commissioner, T.C. Memo. 1972-76, the estates did not show the dollar values of the surviving joint tenant's work. However, those cases are distinguishable from this case. In Berkowitz, husband and wife each contributed $150 in 1892 to start a grocery store. They both worked full time for 43 years to operate and develop their store. They put profits from their business in jointly owned property and accounts. The Court of Appeals for the Third Circuit said that if the husband and wife had an agreement to share profits, the fact that the husband and wife had each made a small initial contribution to start the store and made a complete

joint effort over 43 years established that the wife had contributed at least one-half of the total cost of the jointly held property. Berkowitz v. Commissioner, supra at 320-321. The Court of Appeals for the Third Circuit noted that it was likely that the husband and wife had a profit-sharing agreement, but remanded the case to the Board of Tax Appeals to decide that issue. Id. at 321. This case differs from Berkowitz because there is no comparable evidence here that Ann Van Tine and her parents contributed equally to the cost of acquiring and improving the joint tenancy property or agreed to share profits.

In Estate of Otte, we knew the cost of the properties that were at issue. Some of the costs were $9,000 for 106 acres in 1932, $1,600 for 75 acres in 1937, $2,500 for 25 acres in 1940, $6,000 for 60 acres in 1942, $10,000 for 100 acres in 1946, $800 for 20 acres in 1947, and $15,500 for 184 acres in 1950. In 1963, the decedent, his wife, and their son paid $60,500 for 335 acres. They partitioned the land; decedent and his wife received 120 acres, and the rest went to their son. The husband and wife

worked as a team for 30 years to acquire the property at issue in that case.  Income from their property belonged to both of them under Indiana law.  Although we could not trace each transaction, we held that the taxpayer qualified under section 2040.  Here, we do not know how much consideration decedent paid to buy and improve the three properties.

D.    Conclusion

Ann Van Tine provided a substantial service to VTC. However, she has not shown what part of the value of the three properties at issue is attributable to the amount of consideration that she furnished with those services.[7]  Thus,

---

[7] In light of our conclusion, we need not decide respondent's contentions that Ann Van Tine's services were not adequate consideration for the joint tenancy interests at issue because:  (1) Decedent used the transfers into joint tenancy to avoid probate; (2) Ann Van Tine would have inherited her parents' property under any circumstances; (3) Ann Van Tine did not report her receipt of interests in the properties as income on her individual income tax returns; (4) Ann Van Tine took a full step-up in basis for 7 Diamonte Lane and one of the Sepulveda Blvd. properties; (5) the handwritten statements on the joint tenancy deeds said that Ann Van Tine's father made the conveyances for no consideration; and (6) there was no agreement between Ann Van

(continued...)

petitioner may not exclude one-half of the value of the three properties at issue.[8]

To reflect the foregoing,

Decision will be

entered for respondent.

---

[7](...continued) Tine and her parents that Ann Van Tine would work for VTC without pay until her parents retired in exchange for a joint tenancy interest in whatever property Ann Van Tine's parents owned at that time.  We also need not decide respondent's contention that we must subtract the value of the services the Van Tines provided to Ann Van Tine from the total value of Ann Van Tine's services to VTC to calculate the net value of services that she provided for purposes of section 2040(a).

[8] The Court recently applied Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to decide the value of services contributed by a joint tenant.  See Estate of Fratini v. Commissioner, T.C. Memo. 1998-308.  Even if we did that here, we could not apply the mathematical formula stated in Estate of Young v. Commissioner, 110 T.C. 297, 315 (1998), to calculate the amount excluded because we do not know the cost to buy and improve the three properties at issue.